**McCORD et al. v. BASS et al.　(No. 113–2968.)**

(Commission of Appeals of Texas, Section B. June 16, 1920.)

1. **Limitation of actions ⟨⟩100(7), 105(2)— Right of action of assignors to proceed in protection of surplus accrued on knowledge of assignees' fraud, and was not postponed by litigation between creditors and assignees.**

Relative to bar of limitations or laches, right of action of assignors for benefit of creditors to have relief in protection of their right to any surplus against fraudulent disposition of the property by the assignees, accrued when they knew of the fraud or of conditions charging them with knowledge, and this though it could not then be said that there would be a surplus, and though creditors were proceeding against the assignees.

2. **Judgment ⟨⟩632—Judgment in action by creditors against assignees for benefit of creditors that conveyances by assignees are void against creditors does not avail assignors.**

Judgment in action by creditors against assignees for benefit of creditors, to which assignors are not parties, declaring conveyances by the assignees void as to creditors, does not avail the assignors, as to right to surplus.

3. **Limitation of actions ⟨⟩100(11)—Limitation begins to run against suit for rights under constructive trust when fraud is or should be discovered.**

The statute begins to run against a suit to enforce right under constructive trust from time trust is imposed, except when it is ingrafted on account of fraud, or there is a fraudulent concealment of the facts, and then from the

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

time when the fraud is discovered, or when such knowledge is acquired as will enable the beneficiary, by the exercise of proper diligence and discretion, to discover the facts.

**4. Limitation of actions** ⬤═179(2)—**Petition of assignors against assignees based on fraud held subject to special pleas of limitations.**

Petition of assignors for benefit of creditors against the assignees based on right to surplus and fraudulent disposition of assets by the assignees, filed 15 years after the fraud, *held* to show probable knowledge of the facts, so that, it showing no excuse or justification for delay, it was subject to special pleas of limitations.

Error to Court of Civil Appeals of Fifth Supreme Judicial District.

Suit by Anna F. Bass and others against A. P. McCord and others. Judgment dismissing the petition was reversed by the Court of Civil Appeals (178 S. W. 998), and defendants bring error. Judgment of Court of Civil Appeals reversed, and judgment of trial court affirmed.

T. S. Henderson, of Cameron, Wear & Frazier, of Hillsboro, and Crane & Crane, and Etheridge, McCormick & Bromberg, all of Dallas, for plaintiffs in error.

Sleeper, Boynton & Kendall, of Waco, for defendants in error.

SADLER, P. J. On March 16, 1896, Wilbur F. and Frank M. Crawford, who had theretofore been engaged in business under the firm name of Crawford & Crawford, executed a statutory general assignment of all their property and assets to A. P. McCord and T. S. Henderson as assignees, for the benefit of accepting creditors. McCord and Henderson accepted the trust, and qualified as assignees.

Wilbur F. Crawford died intestate on the 30th day of March, 1902, and Frank M. Crawford died intestate in the month of December, 1902.

This suit was brought on October 13, 1913, by the surviving wives and children of Wilbur F. Crawford and Frank M. Crawford to recover from said assignees and from the Milam County Oil Mill Company, Cameron Cotton Oil Company, and R. L. Batte an alleged surplus claimed to have remained in the hands of the assignees after the payment of all the debts of Crawford & Crawford.

The trial court sustained various exceptions to plaintiffs' petition, and, plaintiffs declining to amend, dismissed the suit.

On appeal the Court of Civil Appeals reversed the judgment of the trial court, and remanded the cause for a new trial. 178 S. W. 998.

The sufficiency of the petition is the only question for decision. It will be necessary to set out the substance of the petition and the exceptions thereto which are to be considered by us.

The plaintiffs, after alleging the death of Wilbur F. and Frank M. Crawford, the necessary facts to show their heirship, the execution of the assignment above referred to, the acceptance and qualification by the assignees, alleged substantially the following facts: That on the 5th day of May, 1897, the assignees, McCord & Henderson, made a simulated and apparent sale to one C. W. Lawrence of portions of said assigned estate, to wit, 242 shares of the Milam County Oil Mill Company stock, of the par value of $24,200; second, an undivided two-thirds interest in 2,000 acres of land out of the W. B. Burton survey in Jefferson county, Tex.; third, 1,000 acres of land in Milam county, Tex., known as the Yankee tract; fourth, one-half interest in five notes executed by one Preston Steele, of the face value of $5,743.75, bearing 10 per cent. interest from January 8, 1896, secured by a vendor's lien on 510 acres of land out of the Samuel Jones league in Milam county, Tex.; that the sale was made for the alleged consideration of $22,500, $8,-500 of which was payable on June 1, 1897, and $14,000 payable October 15, 1897, the assignees to retain possession of the property and to surrender the different items to Lawrence upon payment of the agreed price; that the sale was in fact made for the use and benefit of McCord and Henderson, the assignees, under an agreement with Lawrence' that McCord would guarantee and pay the purchase price and consideration for said property and receive the benefit of such purchase, and that Lawrence in fact held all of said property for the use and benefit of McCord, who by the means and methods alleged sought and attempted to acquire title to said trust estate.

It was alleged that the attempted acquisition of the property by McCord was a fraud upon the creditors of the assignors and upon the assignors; that same was without the consent of the creditors and the beneficiaries under said assignment, and that McCord by acquiring the property in the manner stated acquired the same in fact and in law for the benefit of the assignors and their creditors, and held the same in trust for them; that on the 23d day of June, 1900, McCord and Henderson had paid to the accepting creditors $30,753, and that the total amount of the claims of the unsecured and accepting creditors amounted to $76,624, leaving unpaid 59 per cent. of the debts of said estate.

It was alleged that on January 1, 1898, Lawrence transferred and conveyed to one of the assignees, McCord, the various items of the property above named; that subsequent to the matters above alleged, and on the 4th day of January, 1898, Preston Steele and wife conveyed to McCord an undivided

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

one-half interest in the 510 acres of land out of the Samuel Jones league, in payment and satisfaction of the one-half interest of the assigned estate in the vendor's lien notes executed by Steele, and that subsequent to said deed from Steele McCord conveyed to the defendant T. S. Henderson the undivided one-half interest in said 510 acres of land; that Henderson is now asserting title to all of said land, and that the land at the time of the institution of this suit was of the value of $25,000; that the two-thirds undivided interest in the 2,000 acres of land out of the Burton survey in Jefferson county, Tex., was soon after the 1st day of January, 1898, conveyed by McCord to an innocent purchaser for value, and that said two-thirds interest in said land at the time of the filing of the suit was of the market value of $5,000; that, after acquiring from Lawrence the 242 shares of stock of the Milam County Oil Mill Company, McCord collected and received in dividends on said stock, between June 1, 1900, and September 1, 1913, the sum of $31,-000, and that the 242 shares of stock was at the time the suit was filed of the market value of $50,000; that McCord and Henderson appropriated the moneys received by McCord as dividends or otherwise, on the Milam County Oil Mill Company's stock, to their own use and benefit, and same was not applied to the payment of the claims of accepting creditors under their assignments.

The petition then alleges that on the 10th day of July, 1900, W. A. Nabours and a number of other creditors of Crawford & Crawford instituted suit in the district court of Milam county against the defendants McCord and Henderson, and against the Milam County Oil Mill Company, setting forth the facts as hereinbefore alleged, and seeking a judicial declaration and determination that the assets so acquired by McCord and Henderson be held to remain the property of the assigned estate, to have the same appropriated to the payment of their debts and to the debts of other existing creditors, and sought the appointment of a receiver; that the trial resulted in a verdict for defendants, from which an appeal was taken to the Court of Civil Appeals of the Third District (36 Tex. Civ. App. 504, 75 S. W. 827), and to the Supreme Court (97 Tex. 526, 80 S. W. 595); that it was adjudicated on said appeal that the plaintiffs recover from defendants McCord and the Milam County Oil Mill Company as prayed for in their pleadings, and the cause was remanded, and the trial court was directed to appoint assignees or receivers to execute the trust; that after the decision in the case of Nabours et al. v. A. P. McCord et al., above referred to, and after the case was remanded to the district court of Milam county, the plaintiffs and defendants in said suit entered into a compromise by which the plaintiffs were paid the sum of $50,000 by McCord and the Milam County Oil Mill Company in full satisfaction of their claims against the assigned estate; that, while said case was still pending in the district court of Milam county, W. M. Sprinkel and others, creditors not included in name among the original plaintiffs, filed a petition of intervention therein, by which they sought the same relief as the original plaintiffs; the trial court sustained a demurrer to said intervention, and dismissed it, from which W. M. Sprinkel and others appealed; that on appeal the judgment was reversed by the Court of Civil Appeals (129 S. W. 379), and a writ of error was thereafter granted, and a judgment and decree rendered by the Supreme Court in said cause on December 13, 1911 (105 Tex. 150, 141 S. W. 945, 145 S. W. 903), wherein it was held that the conveyance by McCord and Henderson to Lawrence and the conveyances from Lawrence to McCord constituted a fraud in law and were void, and that the property still belonged to the estate of assignors, Crawford & Crawford, and directed the appointment of a receiver to take charge of all of said property; that on rehearing said opinion was so modified as to leave the matter of the appointment of the receiver to the discretion of the trial court and to proceed to settle the estate in accordance with the opinion of the Supreme Court; that, after the proceedings above set out, the assignees settled and paid off the claims of all the creditors, except the claim asserted by C. W. Lawrence, which claim was rejected by the decision of the Supreme Court because Lawrence had participated in the fraud.

It was further alleged that on June 1, 1896, A. P. McCord was president of the Milam County Oil Mill Company, and so remained for many years thereafter, and up to the year 1906; that the Milam County Oil Mill Company had full knowledge of all the facts with reference to the 242 shares of stock above referred to, and that same were trust property in the hands of said McCord, and knew that the dividends paid to said McCord were trust funds of said estate, and that the Oil Mill Company colluded with and assisted McCord in fraud of the rights of the creditors and in the conversion by said McCord of the dividends of said stock to his own use and benefit; that by reason of such facts the Milam County Oil Mill Company became indebted to the estate of Crawford & Crawford in the amount and for all dividends and payments made on said stock to said McCord; that while the suit of Nabours and others was pending and after the Milam County Oil Mill Company had been made a party, the defendant R. L. Batte claims to have bought from McCord the 242 shares of stock in the Oil Mill Company, and that on or about the 24th day of November, 1908, all the re-

maining stock of said Oil Mill Company and all the assets and property of said Oil Mill Company were sold and assigned to R. L. Batte for a recited consideration of $50,000; that the physical property of the Milam County Oil Mill Company was also conveyed by said Oil Mill Company to R. L. Batte, and that since said time Batte has been in the possession of the properties of said Oil Mill Company; that at the time Batte acquired said property and the shares of stock he was fully informed of all the facts hereinbefore alleged relating to said shares of stock, and knew that in truth and in fact said stock belonged to the assigned estate of Crawford & Crawford.

The plaintiffs sought to have the property which still remained in the hands of the assignees, or either of them, adjudged to be the property of the estate, and sought a recovery against the assignees for the value of all such property as had been disposed of by them, and of all dividends received by them, and sought a judgment against the other defendants for the value of the property alleged to have been converted by each of them.

In connection with the foregoing statement of the contents of the petition, we refer to the opinion of the Supreme Court in the cases of Nabours v. McCord, 97 Tex. 526, 80 S. W. 595; Id., 100 Tex. 456, 100 S. W. 1152; McCord v. Nabours et al., reported in 101 Tex. 496, 109 S. W. 913, 111 S. W. 144; and McCord et al. v. Sprinkel et al., 105 Tex. 150, 141 S. W. 945, 145 S. W. 903.

The defendants filed a general exception to the plaintiff's petition, and also special exceptions claiming that the petition disclosed upon its face the fact that the cause of action therein alleged was barred by the statutes of limitation of two years, of four years, and of ten years, and also setting up by way of exception the defense of stale demand and laches.

This statement was prepared by Presiding Judge MONTGOMERY before retiring from this court, and is adopted by us.

## Opinion.

Various pleas of limitation, as well as laches and stale demand, were urged to the petition by numerous special exceptions. The Court of Civil Appeals held that the petition was not subject to these exceptions. Plaintiffs in error have presented for review the decisions of the Court of Civil Appeals on these matters by various assignments, all of which go to the question of limitation and laches as presented by the petition.

Plaintiffs filed their petition in this cause more than 15 years after the repudiation of the express trust and the impressment of the constructive trust on the property involved. The assignors resided at Cameron, Tex., at the date of the assignment, and, so far as the petition discloses, until the dates of their respective deaths. The property described in the petition was located in Cameron, and the assignees, as well as C. W. Lawrence, also resided there.

There was begun in the district court of Milam county, sitting at Cameron, Tex., on July 10, 1900, a suit by Nabours and other creditors, calling in question the bona fides of the sale to Lawrence and his conveyance to McCord, seeking to set these deeds aside, and to subject the property to the express trust under the assignment. This litigation was pending for nearly two years before the death of either of the assignors. It is presumable from the allegations of the petition that the wives and children of the Crawfords resided in Cameron, at least until the deaths of the respective assignors. The petition discloses a state of facts touching this litigation rendering improbable an assertion of want of knowledge of the facts on the part of the assignors and these petitioners.

No fact is alleged which excuses or justifies the delay in seeking relief against the act of McCord by the assignors or by the plaintiffs.

[1] The contention is made by them, in excuse of delay, that the right to sue for protection of the surplus did not accrue in them, or in their ancestors, until the final discharge of the assignees by the judgment rendered in the intervention of Sprinkel and other creditors. This position is not tenable. The assignors had such a reversionary interest in the property conveyed under the assignment as entitled them to compel a legal performance of duty by the assignees, or to cause their removal. When the assignees did acts violative of the trust accepted, the trustors or the creditors, or both, with knowledge of the breach, or of conditions which in the exercise of proper diligence and discretion charged them with knowledge, had their remedy, either at law or in equity, to protect the estate and require a proper administration thereof. This right accrued to the assignors, whether at the time there appeared to be a surplus or not. It is not to be comprehended that the assignors were to be postponed in this right because the creditors were asserting it. The wrong had been done. The injury was possible. The remedy existed. Knowledge of the facts called for action by them.

But it is said that petitioners did not, and could not, know that there would be a surplus, until the creditors had been satisfied. This is aside from the question. It affords no excuse to the petitioners. The opportunity for the preservation of their right to the surplus, if any, could not be postponed to its ascertainment. On the breach by the assignees of the confidence reposed and accepted, the assignors, with knowledge of the breach, had a right to have the conveyances

set aside and the property brought back under the express trust. They had a right to have the property impressed with a constructive trust and an adjudication of their right to any surplus which might remain after the creditors were satisfied. It is true that the amount of the surplus, or whether there would be any surplus, depended upon the administration of the trust and the satisfaction of the creditors. But that this might not be known or determined until after the trust was administered as to creditors could not, and did not, deprive Crawford & Crawford, or their successors in estate, of the power to assert and enforce obedience to the trust. They could not sit idly by and acquiesce in the wrongful act of McCord, without subjecting themselves to the perils of delay.

Had the assignees been holding the property in recognition of the express trust, then, of course, no cause of action for a surplus would have accrued to the assignors or plaintiffs until there was a complete administration of the trust by McCord and Henderson. This rests in the recognition of the trust by the assignees. The express trust, however, had been repudiated. The assignees no longer held the property. It had passed from the possession of the assignees as such. It was in the hands of an opponent to the express trust. The law gave the assignors a remedy. Article 104, Vernon's Sayles' Statutes. Equity tendered its protection.

[2] The plaintiffs also claim that they are entitled to the benefit of the judgment in the Sprinkel branch of the Nabours Case. They state that, as that judgment declared the conveyances void as to creditors, the property was impressed with the express trust in the hands of the assignees and their vendees, with notice; that the result of this litigation was to set aside the conveyance in opposition to the trust, and to bring the property back into the hands of McCord and Henderson, charged with the express trust created by the assignment.

It is true that this judgment does hold for naught the conveyance, but only relatively, as to those creditors who were parties to that litigation, and as to the estate in so far as the rights of creditors were concerned. This judgment did not determine the rights of the assignors.

There is no allegation in the petition that plaintiffs were parties to that litigation. If it were held to be a class suit, and plaintiffs were admitted to the class, it could not avail them. That decree discharged McCord and Henderson, and all parties holding under them, from further liability to the creditors or to the estate. It was res adjudicata as to all parties to it and all matters germane to the litigation.

However, defendants in error preclude themselves from any benefit under that judgment. They allege that they were not parties to it. If they were not parties so as to be subjected to the burdens, how may they be parties to reap the benefits? We apprehend that it is self-evident that plaintiffs cannot avoid the pains and penalties, while claiming the fruits, of that decree. They were not parties. They were not bound by the judgment. It did not inure to their benefit. It is of no value in excuse of delay. We think this well settled. Volume 2 (2d Ed.) Black on Judgments, § 548; Huntington v. Jewett, 25 Iowa, 249, 95 Am. Dec. 788.

[3] This is a suit to enforce rights accruing under a constructive trust, and the general rule as to limitation is that the bar begins to run from the time the trust is imposed. 25 Cyc. p. 1155. The exception to this rule is that, where the trust is ingrafted on account of fraud, or there is a fraudulent concealment of the facts, the statute begins to run from the time when the fraud is discovered, or when such knowledge is acquired as will enable the cestuis que trustent by the exercise of proper diligence and discretion, to discover the facts. Alston v. Richardson, 51 Tex. 1; Cole v. Noble, 83 Tex. 432; 25 Cyc. 1157.

The rule as announced by the Supreme Court of the United States is that "a cestui que trust seeking to establish a stale trust must allege in his bill facts sufficient to excuse the apparent laches." Enc. P. & P. vol. 22, p. 129; Badger v. Badger, 2 Wall. 87, 17 L. Ed. 836; Felix v. Patrick, 145 U. S. 317, 12 Sup. Ct. 862, 36 L. Ed. 719; Wood v. Carpenter, 101 U. S. 135, 25 L. Ed. 807; Bank v. Carpenter, 101 U. S. 567, 25 L. Ed. 815.

[4] The further general rule appears to be settled that in courts of blended law and equity jurisdiction, or where a right may be asserted and a remedy invoked in the same transaction either at law or in equity, the statute will be applied as at law; that is, that where the cause of action as set forth in the petition is apparently barred, excuse must be alleged for the delay, or special demurrer will lie.

We merely call attention to these rules, in view of the contention of the parties relative to the effect of the special exceptions upon the petition.

The petition in the instant case shows such a lapse of time between the origin of the right and its filing as raises the bar of the statute, in the absence of allegations of excuse for the delay in avoidance of the statute. Wilson v. Simpson, 80 Tex. 278, 16 S. W. 40; Cole Case, supra; Hunter v. Hubbard, 26 Tex. 537; Tinnen v. Mebane, 10 Tex. 246, 60 Am. Dec. 205. There is no specific allegation of fraudulent concealment of the facts; no allegation of want of knowledge; nor any other excusatory matter. Excuse for the delay does not arise by implication from the facts alleged.

Should the facts disclosed in the opinions

of the Supreme Court, to which reference is made in the petition, be treated as part of the petition, then actual knowledge, and probably guilty participation, is shown on the part of the assignors in the transactions from which arise the claim of plaintiffs. Plaintiffs in error urge that we should take judicial knowledge of the facts as same are stated in the various opinions of the Supreme Court touching this matter. We do not think it necessary to go into a discussion of the extent to which the facts disclosed in these cases should be considered in passing upon the effect of the petition.

Our opinion is that, upon the face of the pleadings, it appears that knowledge of the facts alleged as the foundation of the right asserted is chargeable to Wilbur and Frank Crawford and the plaintiffs.

A court of equity viewing the allegations in the bill here under scrutiny cannot escape the force of the facts. The ancestors of petitioners lived and moved for almost two years in the environment of the acts which are charged as giving rise to plaintiffs' cause of action. The record discloses a steady advancement in the value of the properties involved. It should not be laid at the door of equity that she will permit one to sleep for 15 years in the very atmosphere of a charged wrong, while conditions are changing enhancing the value of the property, rights being asserted in view of acquiescence, and then, when the changed conditions make it worth while, assert rights and gain her protection,

In the language of Mr. Justice Swayne:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extending to the limit prescribed, is itself a conclusive bar. The bane and antidote go together." Wood v. Carpenter, 101 U. S. 139, 25 L. Ed. 807.

As said by Judge Bonner in Lewis v. Alexander, 51 Tex. 592:

"It is much to be regretted that this litigation has been so protracted, and that the issues involved have not long since been adjusted and buried with the sad memories of the dead past which gave them birth."

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and that of the trial court affirmed.

PHILLIPS, C. J. We approve the judgment recommended in this case.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes