Ervin W. BLUM, Appellant,

v.

J. A. ELKINS, Sr., et al., Appellees.

No. 4096.

Court of Civil Appeals of Texas.

Waco.

June 13, 1963.

John H. Jenkins, Houston, for appellant.

Vinson, Elkins, Weems & Searls, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

TIREY, Justice.

This is an appeal from a summary judgment in favor of defendants. Plaintiff Blum brought this action against J. A. Elkins, Sr., First City National Bank of Houston, Carnavon Corporation and J. F. Elrod, to recover exemplary damages in the amount of $1,000,000.00, as a result of an alleged fraudulent sale of certain property in Harris County, Texas, on November 7, 1953, and he also sought to cancel and set aside all conveyances made to and by appellees, and he sued for an additional sum of $96,000.00 as a reasonable rental value of the property. Plaintiff alleged that the fraudulent sale occurred on November 7, 1953, but he did not file his suit until nine years later on April 4, 1962. Blum alleged that he entered into a contract with defendant Elrod on May 5, 1953, authorizing him to act as trustee to sell his home at 200 Carnavon Drive in Houston and to make payments on certain debts out of the proceeds of the sale. He also alleged that the appellees conspired to defraud him by having Elrod sell the house to the Carnavon Corporation for a consideration of $37,000.00 when the property had a reasonable market value of $130,000.00. He further alleged that attorney Percy Foreman had lived in his home at 200 Carnavon Drive for several years, and that he never authorized or agreed that Foreman should reside in this home, and he alleged that Elrod was supposed to pay Foreman the sum of $25,000.00 out of the proceeds received from the sale of the home. Blum's oral deposition was taken and is a part of the record in this cause.

It is without dispute that until May 1953 this property was owned by Blum subject to a first lien indebtedness of $69,224.34 to the City National Bank, and a second lien indebtedness to Percy Foreman of $25,000.-00 plus interest on both of these obligations, the obligations being delinquent in May 1953, and Blum was unable to pay them except through a sale of the property. Blum testified in part that he was "put to the necessity, in order to pay those debts, of letting this piece of property be sold." In order to accomplish that purpose Blum conveyed the property to Elrod with instructions to sell the property and pay the foregoing obligations and, if anything remained, the balance to him. That was evidenced by the written agreement of May 5, 1953. The record shows that Elrod sold the property on November 7, 1953 to Carnavon Corporation, and the deed recites a consideration of $10.00 cash, and the assumption of Blum's indebtedness to the City National Bank of $32,000.00. This deed was recorded on December 9th, 1953, and shows revenue stamps in the amount of $40.70 attached to the deed, and as recorded shows a consideration of $37,000.00. Carnavon took the property subject to Foreman's second lien which has not been released. In Blum's deposition, which was taken shortly after the filing of this suit in April 1962, he testified to the effect that in 1954 he knew Foreman was living in the house, and although he alleged in his petition that he never authorized or agreed that Foreman could reside in his home, yet he knew Foreman was living in the house and he never once asked Foreman why he was in possession. Blum testified specifically:

"Q. Now, when you did talk to Mr. Foreman, as you say, in the Cork Club, * * * in 1956 or 1957 * * * did you specifically ask him what he was doing living in it?

"A. I answered that three times, I didn't.

"Q. Alright sir, I wanted to make sure that you hadn't. So that until this time you haven't asked Mr. Foreman what he was doing living in that house?

"A. No, sir."

Blum further testified to the effect that every three or four months from 1953 to late 1958, he asked for but was refused an accounting and finally concluded in 1958, before he went to the penitentiary, that he was going to have to file suit. He testified specifically:

"Q. But it was a matter of a few weeks before you went to the penitentiary that you knew you were going to have to file suit to get an accounting?

"A. Yes, sir."

Following the taking of Blum's deposition, plaintiff took the deposition of Mr. Elkins and Mr. Elrod. These depositions conclusively negatived the existence of any fraud. Elrod testified to the effect that his appraisal of September 16, 1949, so heavily relied upon by appellant, was a reproduction cost appraisal and not a market value appraisal; that the house included several features which were very expensive and would therefore increase a reproduction cost appraisal, but which were not much in demand and would therefore decrease the market value.

After the foregoing depositions were filed the appellees filed an amended answer raising defenses of both the two and four year statutes of limitation, and moved for a summary judgment on the ground that no genuine issue of fact was presented, and that they were entitled to a judgment as a matter of law. With respect to appellees' claim of limitations, appellant answered only that a fact issue exists on "the date of which plaintiff could reasonably have discovered the consideration for such sale."

Blum assails the judgment on what he designates as six points. They are to the effect that the Court erred in sustaining the motion for summary judgment in favor of each of the defendants. Plaintiff, in his brief, says: "Since in effect appellant really has only one complaint, that the trial court erred in holding that as a matter of law the statutes of limitation barred his action, all

points of error will be briefed together." The appellees present three counter-points, and they are to the effect: (1) That appellant's alleged causes of action for damages and for cancellation of certain conveyances are barred respectively by the two-year and four-year statutes of limitations, because appellant is charged with notice as a matter of law more than eight years prior to the filing of the suit that Elrod had executed and delivered a conveyance to the property in question; (2) That the existence of any relation of trust and confidence between Blum and Elrod does not change the rule that there must be diligence in discovering fraud and that there is a duty to investigate where a party has knowledge of facts sufficient to excite inquiry; (3) That the Court properly granted the appellees' motion for a summary judgment, because appellant failed to allege any facts in his petition establishing that he could not have discovered the sale of the property by the exercise of reasonable diligence. We sustain each of the foregoing counter-points for reasons which we shall hereinafter briefly state.

It is well settled in Texas that when a plaintiff brings suit by reason of alleged fraudulent conduct he must elect between suing for damages or for cancellation and recision of a contract or conveyance. In this suit appellant has sued for both damages and cancellation. His alleged cause of action for damages is, of course, governed by the two-year statute of limitation, namely, Article 5526, Tex.Rev.Civ. Stats. (1925). In this connection appellant testified in his oral deposition to the effect that he knew four weeks before he went to the penitentiary on December 13, 1958, that he would have to file suit to get an accounting. Since he did not file suit until 1962 it follows that any claim he had for damages would be barred by the two-year statute of limitation aforesaid. Moreover, the fact that the appellant was in the penitentiary during 1959, 1960 and 1961, did not toll the running of the statute. See Article 5535, Tex.Rev.Civ.Stats. (1925). Once the statute has commenced to run, it is not tolled

by imprisonment. See Article 5544, Tex. Rev.Civ.Stats.

■■■ Appellant's claim for cancellation of the deed is barred by the four-year statute of limitation, namely, Article 5529, Tex. Rev.Civ.Stats. It is true that in Texas fraud will prevent the running of a statute until such time as the fraud is discovered, or might have been discovered by the exercise of reasonable diligence. Perhaps one of the clearest statements of the Rule in Texas is found in Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263, wherein the Supreme Court said:

"The rule has long prevailed in this State that fraud will prevent the running of a statute of limitation only until such time as the fraud is discovered, or by the exercise of reasonable diligence it might have been discovered."

Appellant's cause of action is grounded on the premise that the fraudulent act was in bringing about a sale of the property by Elrod to Carnavon Corporation at a price less than its fair market value. When did appellant have knowledge of sufficient facts from which it could be determined by the exercise of reasonable diligence that a sale had been made? The answer is: When it is determined that appellant is charged with notice of the sale, it follows that his cause of action accrued at that time because he then knew that he was entitled to an accounting. He could have ascertained the market value of the property at that time, and he knew the amount of the indebtedness to the bank and to Foreman. Accordingly, he could have determined whether any balance should have been paid him under the contract which he executed on May 5, 1953, wherein he authorized Elrod to sell the property. Needless to say Blum is and was charged with notice of the deed to the corporation, because it was filed for record on December 9, 1953. Moreover, he had knowledge that Foreman was in possession of the house and that was sufficient to place him upon inquiry. The contract that Blum executed to Elrod on May 5, 1953 authorized Elrod to convey this property at any time, from time to time, for such consideration and under such conditions as (he) "you may desire." This contract also provided that all sums received by Elrod from any sale should be disbursed by him as follows: first, to the City National Bank in payment of all notes; next, to Foreman to discharge the sum of $25,000.00 owing by Blum to Foreman for representing him as attorney, and for costs, expenses and advancements; and last to payment of taxes and charges owing against the property. It is without dispute that the notes to Foreman had been executed to him by reason of his employment to represent Blum in connection with six federal indictments and seventeen state indictments which had been returned against Blum in 1952, charging him with falsifying records as Executive Director of the Housing Authority in Houston. The fee also covered representation by Foreman in connection with a subsequent indictment and trial in a hit-and-run driving case. Foreman was handling these matters continuously for Blum from 1952 to 1962. Moreover, when appellant executed the agreement with Elrod on May 5, 1953, which placed title to the property in Elrod by executing and delivering a deed to him on the same date, Blum obviously expected that Elrod would sell the property, and he knew that he should anticipate a sale of the property, and Blum had the duty of determining from time to time whether a sale had been consummated. In fact, it is without dispute that appellant was trying to sell the property, and at the same time had it listed with a real estate agent. Therefore, when Elrod executed the deed on November 7, 1953 to Carnavon Corporation, which was filed for record on December 9, 1953, Elrod was carrying out the expressed intention of Blum in the agreement of May 5, 1953. We think Blum was charged with constructive knowledge of this sale from the date of the recording of the deed, because he had executed the agreement providing for the sale. Since he could have determined the fair market value on the date of

the sale his cause of action accrued at that time. In appellant's brief we find this admission:

"Undoubtedly the deed from Elrod to the Carnavon Corporation was filed for record on December 9, 1953, but this deed was at most notice that the property had been sold."

But, appellant contends that the recording of the deed did not place him on notice of the full sale price of the property. We think this contention is immaterial, and is not controlling, because Blum had notice that there had been a sale of property, and he could have obtained an accounting from the parties with respect to the proceeds of the sale, or he could have filed suit for an accounting. Moreover, appellant stated in his petition that he did not agree or consent to Foreman taking possession of and living in the house, but in his deposition he admits that he received actual notice that Foreman was in possession, and he testified that he read in one of the Houston papers in 1954 that Foreman had married and had moved into the house. Moreover, prior to this date, Blum had sold some rugs, carpeting and stove in the house to Foreman, and the carpeting was cut to fit specially the rooms of this house and placed on the floor. He further testified to the effect that in 1956 or 1957 he went to the house to meet Foreman's brother who was going to Austin with him in connection with one of the cases which Foreman was handling for him, and that he saw and talked with Foreman at the house. During the years of 1955 and 1956 he had several telephone conversations with Foreman who was at the house; that Foreman tried two cases for him during this period of time and, he, Blum, was with him on various occasions. Moreover, Blum wrote Foreman six or eight letters while he was in the penitentiary, and he received three letters from Foreman. Blum further testified that he never asked Foreman why he was in possession, and did not write him about the house.

■ We think this record and the testimony of Blum conclusively shows that more than four years before Blum went to the penitentiary in December of 1958, and approximately eight years before filing this suit, he had actual notice that Foreman was living in the house. During this period of time Blum did not pay any taxes or insurance premiums with respect to the property, or exercise any other acts of ownership, and Blum lived in Houston continuously until he went to the penitentiary in December 1958. We think that Blum's actual knowledge of Foreman's possession was notice to him of the rights of Carnavon Corporation under the deed from Elrod, which deed had been filed for record in December 1953. See Houston Oil Co. of Texas v. Choate, 232 S.W. 285, (Tex.Com.App.). See also Wise v. Anderson, 359 S.W.2d 876, (Tex.Sup.). We think appellant, in his brief, overlooks the fact that he had the duty to investigate the terms of the sale upon learning that the property had been sold. He could have determined these facts from the parties to the transaction, and if they did not make full disclosure to him, he could have brought suit for an accounting and, since he did not make any investigation to determine the terms of the sale, he must be charged with notice of all the facts that could have been determined from a diligent inquiry or suit. It is well settled in Texas that where there is a trust relationship the four-year statute of limitations is applicable from the time that a party is charged to use diligence in making an investigation. See Courseview, Inc., v. Phillips Pet. Co., Tex.Civ.App., 298 S.W.2d 890. Same case 158 Tex. 397, 312 S.W.2d 197.

■ Finally, it is our view that Blum, by his own admissions in his deposition, established that he was charged with notice of the sale of the property more than four years prior to the bringing of this suit and, because of this fact, we think the trial court properly granted appellees' motion for a summary judgment, because appellant did not allege any facts that would bar the running of the statutes of limitation. See 28 Tex.Jur., p. 294. Luling Oil & Gas Co., v. Humble Oil & Refining Company, 144

Tex. 475, 191 S.W.2d 716; McCord v. Bass, 223 S.W. 192, (Tex.Com.App.); Cohen v. Shwarts, Tex.Civ.App., 32 S.W. 820, (n. w. h.). We are of the further view that this record affirmatively shows by appellant's own admissions in his oral deposition that he knew or should have known of the alleged fraud by 1953 or 1954 at the latest, and by reason thereof, the trial court properly granted appellee's motion for summary judgment, and for the reasons stated we think this judgment should be affirmed.

Accordingly, the judgment is affirmed.