**Terry D. WINTON, Plaintiff,**

v.

**Jerry BURTON, Royce Abbott, and John Thompson, Defendants.**

**Civ. A. No. S–79–68–CA.**

United States District Court,
E.D. Texas,
Sherman Division.

Feb. 15, 1984.

Terry D. Winton, pro se.

Bill Bass, Canton, Tex., court-appointed for plaintiff.

Tom O'Connell, Crim. Dist. Atty., McKinney, Tex., Ernest E. Figari, Jr., P.C., A. Erin Dwyer, Johnson & Swanson, Dallas, Tex., for defendants.

## FINAL ORDER OF DISMISSAL

JOE J. FISHER, District Judge.

CAME ON for consideration the above referenced civil action, this Court having heretofore ordered that this matter be referred to the United States Magistrate for proper consideration pursuant to applicable laws and orders of the Court. Having received the report of the U.S. Magistrate pursuant to its order, and no objections thereto having been filed, this Court is of the opinion the findings and conclusions of the Magistrate are correct, and adopts same as the findings and conclusions of the Court. It is therefore

ORDERED, ADJUDGED and DE-CREED that this cause be, and the same is hereby, DISMISSED from the docket of this Court

## REPORT OF THE U.S. MAGISTRATE

Nov. 16, 1983.

HOUSTON ABEL, United States Magistrate.

Plaintiff, Terry D. Winton, proceeding *in forma pauperis* with Court appointed at-

torney, claims violation of his constitutional rights under 42 U.S.C. § 1983. Plaintiff filed this action while an inmate of the Texas Department of Corrections and has recently been released.

The Defendants are the former sheriff of Collin County, Texas, Jerry Burton, and two of his deputies, Royce Abbott and John Thompson.

## NATURE OF THE CASE

On June 28, 1979, Plaintiff Terry D. Winton ("Winton") brought the present action against Defendants Jerry Burton ("Burton"), Royce Abbott ("Abbott"), and John Thompson ("Thompson") seeking damages for alleged violations of his civil rights while confined in the Collin County Jail. On August 9, 1979, Burton, Abbott, and Thompson (collectively, the "Defendants") filed their original answer denying all of the material allegations of Winton's complaint (the "Complaint"). In addition, on October 25, 1979, the Defendants timely moved to dismiss the present action as barred by the applicable statute of limitations.

On April 23, 1981, this Magistrate appointed Bill Bass, Esq. of the Van Zandt County Bar to represent Plaintiff. A pretrial hearing was held before this Magistrate on October 10, 1981 at which time Plaintiff requested additional time for discovery and moved to amend his complaint.

On April 21, 1982, the Court granted Winton leave to file an amended Complaint in the present action. On April 23, 1982, Winton filed such amended Complaint, misnomered as his supplemental Complaint[1] (the "Supplemental Complaint"), in which he asserted for the first time additional claims against the Defendants arising out of transactions or occurrences separate from those which gave rise to the claims asserted by him in the Complaint.

---

1. A "supplemental pleading" is one that sets forth transactions or occurrences which have happened since the date of the pleading sought to supplement. Fed.R.Civ.P. 15(d). Each of the

matters alleged in Winton's "supplemental complaint," however, predated the institution of the present action in June 1979.

On April 29, 1982, an evidentiary hearing was held in Tyler, Texas, on Defendants' Motion to Dismiss at which Winton appeared with counsel, Bill Bass and Defendants appeared with counsel, Collin County Assistant District Attorney. Plaintiff testified and called as adverse witnesses, the three Defendants and James Epolito, a former Collin County Deputy Sheriff. The hearing was continued on Plaintiff's Motion to allow additional witnesses to testify. On May 11, 1982, the hearing was resumed with testimony of Plaintiff's witness Morrison and Coppola, T.D.C. inmates, and former inmates of the Jail. The Defendants, on June 27, 1983, renewed their Motion to Dismiss, supported with extensive briefing.

Winton's claims arise from four separate incidents allegedly occurring at the Collin County Jail (the "Jail") during the period of his incarceration in the Jail.

### FINDINGS AND CONCLUSIONS

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

2. The following chronology of events is helpful in the understanding of the legal issues involved:

(A) November 16, 1974—Plaintiff confined in the Collin County Jail

(B) February 1, 1975—Plaintiff's Claim #1 occurred—the attempted jailbreak. (Burton, Abbott as Defendants)

(C) June, September, 1976—Plaintiff's claims #2 and #3 occurred. (Defendant Thompson)

(D) May 17, 1977—Plaintiff's escape from the Collin County Jail.

(E) December 1, 1977—Plaintiff's reincarceration in the Collin County Jail.

(F) January, 1978—Plaintiff's Claim #4 occurred. (Abbott as Defendant)

(G) June 28, 1979—Plaintiff filed Complaint on Claim #1.

(H) April 28, 1981—Plaintiff's attorney Bill Bass appointed.

(I) April 22, 1982—Plaintiff filed Supplemental Complaint raising for the first time Claims #2 and #3 (Thompson) and Claim #4 (Abbott)

(J) April 29, 1982 and May 11, 1982—Evidentiary hearing on Defendants' Motion to Dismiss.

3. This report makes no findings as to the merits of Plaintiff's cause of action for the reason that the Complaint must be dismissed as barred by Article 5526, Tex.Rev. Civ.Stat. (Vernon 1958), which provides for a two-year limitation period.

4. The following is a summation of the facts which support this conclusion in the preceding paragraph.

(A) *The Escape Attempt.* On November 16, 1974, Winton was arrested and placed in the Collin County Jail (the "Jail") on a charge of burglary. Winton Transcript 5:19–22.[2] Shortly thereafter, Winton and several of his fellow inmates at the Jail attempted to escape.[3] After another prisoner "sounded the alarm", Burton, Abbott, and Thompson, along with other sheriff's deputies, entered the cell block to quell the attempted jailbreak and apprehended Winton and the other escapees. According to Winton, the Defendants Burton and Abbott violated his civil rights while attempting to capture him in the aftermath of the escape attempt. (Claim #1).

On July 9, 1975, Winton was convicted of burglary and sentenced to twenty years in the state penitentiary in Huntsville. (Winton Transcript 2:20–22). Accordingly, Winton was transferred from the Jail to the Texas Department of Corrections in order to serve the term of his imprisonment.

4. (B) *Alleged Subsequent Violations and the Escape.* Approximately one year later, Winton was transferred back to the Jail in order to appear at a hearing on his writ of habeas corpus. During the period

---

2. The sworn testimony of Winton taken at the evidentiary hearing held before this Court on April 29, 1982, will be cited as "Winton Transcript."

3. Winton alleges that this escape attempt occurred on February 1, 1975. Winton Transcript 5:23–6:1.

**1048**

of this second incarceration at the Jail, Winton alleges that Thompson violated his civil rights. In this connection, Winton asserts that on two occasions, first in June and later in September, 1976, Thompson struck him with a flashlight during a "shakedown" of the Jail which was conducted by sheriff's deputies in order to locate weapons smuggled in by the prisoners. (Claims # 2 and # 3).

On May 14, 1977, while Winton was still incarcerated in the Jail on this second occasion, he learned that his burglary conviction had been overturned by the Texas Court of Criminal Appeals. (Winton Transcript 4:10–17). Although Winton's attorney informed him that a new bond would be set for Winton's release, Winton elected instead to plan another escape, which he successfully executed on May 17, 1977. *Id.* For the next six months, until he was relocated and captured in California, Winton was not imprisoned in Texas, and he was free from any restraint associated with imprisonment.

In December, 1977, following his capture in California, Winton was extradited to Texas and returned to the Jail pending his trial on charges of burglary and escape. According to Winton, his civil rights were again violated, during the period of this third incarceration in the Jail, when he was allegedly assaulted in January, 1978, by another inmate who was acting at the direction of Abbott. (Claim # 4).

4. (C) *The Complaint.* On June 28, 1979, more than two years after he successfully escaped from the Jail, Winton filed the Complaint and claimed damages for violations of his civil rights which allegedly occurred on the night of his attempted escape *more than four years earlier.* Winton has introduced no evidence showing that he was denied access to the courts and thereby prevented from bringing the present action at any time during the period of his confinement.

(D) *The Supplemental Complaint.* On April 23, 1982, which was almost five years after the date he escaped from the Jail, Winton filed the Supplemental Complaint.

In the Supplemental Complaint, Winton alleges that his civil rights were violated (1) by Thompson, as a result of the incidents allegedly occurring in June and September, 1976, almost six years earlier, and (2) by Abbott, as a result of the alleged incident in January, 1978—more than four years prior to the filing of the Supplemental Complaint. Again, Winton failed to allege or demonstrate any inability to obtain access to the courts within two years of the date these causes of action accrued.

### DISCUSSION

■ 5. The claims asserted by Winton in the Complaint are barred by the applicable limitations period.

(A) *Winton's Claims are Subject to a Two-Year Statute of Limitations.* Since § 1983 does not itself contain a limitations period, the federal courts will borrow the state statute of limitations which applies to the most similar state cause of action. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *Major v. Arizona State Prison,* 642 F.2d 311, 312 (9th Cir. 1981); *Kissinger v. Foti,* 544 F.2d 1257, 1258 (5th Cir.1977). Indeed, the Civil Rights Act specifically provides for this borrowing procedure. See 42 U.S.C. § 1988.

■ Winton's allegations in the present action essentially sound in tort for injury done to his person, and therefore, under Texas law the appropriate limitations statute is Tex.Rev.Civ.Stat. art. 5526 (Vernon 1958) which provides for a two year limitations period. *See Humble v. Foreman,* 563 F.2d 780, 781 (5th Cir.1977) (Louisiana law); *Smith v. Avance,* 553 F.Supp. 434, 437 (E.D.Tex.), *aff'd,* 683 F.2d 415 (5th Cir. 1982). In this case, the last overt act of the Defendants alleged in the Complaint took place on February 1, 1975. Thus, Winton's action, which was filed more than four years later, is barred by article 5526 unless some "tolling" provision suspended the running of the limitations period.

(B) *Article 5526 Was Not Tolled by Virtue of Winton's Imprisonment.* Prior to 1980, the law was unsettled as to whether state "tolling" provisions could suspend commencement of the limitations period applicable in federal suits brought under § 1983. In *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), however, the Supreme Court held that federal courts, when borrowing state limitations statutes in § 1983 suits, must also include state rules of tolling *unless they are inconsistent with federal policies.* The Court went on to identify two of the principal policies embodied in § 1983 as deterrence and compensation, and concluded that a state statute of limitations which *failed* to provide for tolling was consistent with these policies since plaintiffs could readily enforce their claims, thereby fostering deterrence, simply by commencing their actions within the limitations period. Indeed, the Court hinted strongly that a converse rule which would allow an action to be brought long after the date the cause of action accrued would undermine the goals sought by § 1983:

> "Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which results in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh."

*Id.* at 487, 100 S.Ct. at 1796.

Article 5535 of Texas Revised Civil Statutes, the Texas "tolling" provision for prisoners, provides that a person *disabled* by imprisonment at the time his cause of action accrues shall have the same time after the removal of his disability in which to commence his action as is allowed to others not similarly disabled. Tex.Rev.Civ.Stat. art. 5535 (Vernon Supp.1982–83). Although Texas federal courts before the de-

cision in *Tomanio* had consistently held that this tolling provision conflicted with the federal policies underlying § 1983, *see, e.g., Stephens v. Curtis*, 450 F.Supp. 141 (S.D.Tex.) (and numerous unpublished decisions cited therein), no court has since discussed the implications of article 5535 on § 1983 policies in light of *Tomanio's* admonition.[4] Since *Tomanio*, however, courts in other jurisdictions, interpreting tolling provisions almost identical to article 5535, have refused to toll the applicable limitations period. *See, e.g., Major v. Arizona State Prison*, 642 F.2d 311 (9th Cir.1981); *Campbell v. Guy*, 520 F.Supp. 53 (E.D. Mich.1981).

In *Major*, the Ninth Circuit concluded that an Arizona prisoner's incarceration did not strip him of the legal capacity to prosecute his § 1983 suit from jail, and therefore, that the prisoner was not "disabled" within the meaning of the tolling statute. Likewise, here, Winton has failed to demonstrate that his imprisonment, either in the Jail or the Texas penitentiary, cut off his access to the federal courts. Indeed, the present action was actually brought by Winton while he was still an inmate pursuant to regular procedures maintained at the prison which assist prisoners in filing such claims. Consequently, Winton was not "disabled" within the meaning of article 5535 and, therefore, the two-year limitations period provided by article 5526(1) was not tolled during the period of Winton's imprisonment and (2) had long since expired before the present action was instituted in June, 1979.

■ Most importantly, federal courts are obliged to apply state tolling provisions as those provisions have been interpreted by the state courts themselves. In the recent Texas decision of *Johnson v. McClean*, 630 S.W.2d 790 (Tex.Ct.App.1982, no writ), the Court, while acknowledging that article 5535 applies literally to any plaintiff imprisoned at the time his cause of action ac-

---

**4.** *But see Miller v. Smith*, 625 F.2d 43 (5th Cir. 1980) and *Williams v. Dallas County Commissioners*, 689 F.2d 1212 (5th Cir.1982) [both of which acknowledged the mandate of *Tomanio* but apparently remanded the cases to the district court for a determination of whether article 5535 tolled the statute under all of the relevant facts and circumstances.]

crues, held that the purpose of article 5535 is to "protect a legally disabled party who has *no access to the courts." Id.* at 793. Indeed, the court noted a trend in the federal decisions that 5535 should apply only to those prisoners who suffered under actual disabilities, and cited with approval the decision in *Blum v. Elkins,* 369 S.W.2d 810 (Tex.Civ.App.1963, no writ), for the rationale that "if a prisoner had actual opportunity to prosecute a civil suit, the statute of limitations is not tolled by article 5535." *Id.* at 792. Clearly then, a Texas court would conclude that Winton's Complaint was filed too late, and a federal court interpreting Texas law is not empowered to hold otherwise.

■ (C) *Alternatively, Article 5535 Tolled the Limitations Period Only Until May, 1977.* Even assuming for the sake of argument that article 5535 tolled the limitations period during Winton's confinement, the present action is still barred since it was brought more than two years after Winton escaped from the Jail on May 17, 1977. In this connection, the law in Texas is clear that the limitations period will commence to run immediately upon the removal of the disability. Once the initial restraint is lifted and a prisoner is freed from his confinement, the statute of limitations begins to run and it is not tolled by any subsequent imprisonment. *See, e.g., Smith v. Avance,* 553 F.Supp. at 438; *Stephens v. Curtis,* 450 F.Supp. 141, 144 (S.D.Tex. 1978); *Blum v. Elkins,* 369 S.W.2d 810 (Tex.Civ.App.1963, no writ).

In the present action, Winton was admittedly not incarcerated from May 17, 1977 through December, 1977. Thus, even if Winton was entitled to claim the benefits of the disability statute based on his confinement, his escape from imprisonment on May 17, 1977, would commence the running of the two-year statute of limitations pursuant to the clear meaning of article 5535. Since the present action was not filed until June, 1979, it is unquestionably time-barred.

■ 6. *The Claims Asserted in the Supplemental Complaint are Also Barred by Limitations.* Inasmuch as Claims # 2 and # 3 asserted in the Supplemental Complaint occurred in June and September, 1976, Winton's escape from prison on May 17, 1977, would commence the running of the two-year statute of limitations and was time barred on May 17, 1979. Claim # 4 of the Supplemental Complaint on the otherhand, relates to an incident claimed to have occurred in January, 1978 when Abbott is alleged to have induced another inmate to attack Winton. Winton has been in continuous custody since that date, but even so, the Texas Tolling Statute for prisoners is inapplicable to Claim # 4. As stated before in article 5535, the prisoner "tolling" provision provides that a person *disabled* by imprisonment at the time his cause of action accrues shall have the same time after the removal of his disability in which to commence his action as is allowed to others not similarly disabled. Significantly, the handful of Texas appellate courts which have interpreted this tolling provision have concluded:

> "Clearly, the purpose of art. 5535 is to protect *a legally disabled party who has no access to the courts,* and to insure that his right to bring suit will not be precluded by the running of a limitations statute prior to the removal of his disability."

*Johnson v. McClean,* 630 S.W.2d at p. 793; *accord Adler v. Beverly Hills Hospital,* 594 S.W.2d 153 (Tex.Civ.App.1980, no writ).

In *Johnson,* a prisoner filed suit against his former attorney on a cause of action that admittedly arose during the period of his incarceration, but failed to effect service on the defendant until some three years later. The Court of Appeals held that the suit was barred by the two-year statute of limitations, even though the Plaintiff had been continuously imprisoned since the date his cause of action accrued. Rejecting the prisoner's contention that article 5535 continued to toll the limitations period following commencement of the action, the court concluded that the protective provisions of article 5535 did *not* apply

because the prisoner actually filed his lawsuit during the period of his legal disability. 630 S.W.2d at 793. According to the decision in *Johnson*, once the prisoner commenced his action, thereby affirmatively demonstrating that he had access to the courts and was not handicapped by any disability, he forfeited any future protection that might derive from article 5535.

Likewise in the present action, the Supplemental Claim is barred by virtue of Winton's failure to assert the claim within two years after his cause of action accrued. In this connection, Winton alleges that Abbott violated his civil rights in January, 1978 during Winton's imprisonment at the Collin County Jail. In June, 1979, during the term of his imprisonment and within two years of the alleged violation by Abbott, Winton filed suit against Abbott and others and thereby demonstrated that he was not "a legally disabled party who had no access to the courts"; however, Winton failed to include the Supplemental Claim in his original complaint, choosing instead to wait three additional years before asserting that claim by amendment. Under the controlling authority of *Johnson*, therefore, the Supplemental Claim is clearly time-barred and Winton cannot rely on the protective provisions of article 5535 since he timely filed suit against Abbott, notwithstanding his imprisonment, but failed to assert the Supplemental Claim until after the limitations period had expired.

According to Winton, however, the tolling provision operates absolutely and preserves the Supplemental Claim from the bar of the statute of limitations, notwithstanding Winton's failure to join the Supplemental Claim within two years of the commencement of the present action. Winton's argument is apparently premised on the belief that he can selectively prosecute his claims against Abbott whenever he chooses so long as he remains imprisoned. Indeed, under Winton's rationale, he would be free to assert additional claims, or file entirely separate suits, against Abbott at his pleasure any time over the next ten years while he is still in prison, even if those claims or suits involve causes of action arising *before* the date the present action was commenced. In *Johnson*, the Court specifically rejected such a notion:

> "The reasonable purpose of a tolling statute is that of a shield, not an offensive weapon. To interpret such a statute otherwise would be to establish prisoners as a preferred class of litigants, authorized to initiate and conduct litigation on a schedule of their own choosing. * * * We note that [the prisoner] makes no contention in either his pleadings opposing summary judgment or in his appellate brief that he was denied access to the courts once he commenced his suit pro se."

*Johnson v. McClean*, 630 S.W.2d at p. 793.

Even apart from the *Johnson* mandate, this Court is required to construe article 5535 in a fashion that gives effect to the legislative intent. *See Commissioner of Internal Revenue v. Brown*, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (where literal application of statute leads to absurd results or thwarts obvious purpose of statute, courts are obliged to give effect to legislative intent.) Like *Johnson*, the federal courts which have interpreted article 5535 have concluded that the Legislature's intent in enacting the statute was "to afford due process to those who were *genuinely* 'disabled' and not simply to suit the *convenience* of those imprisoned." *See, e.g., Stephens v. Curtis*, 450 F.Supp. 141, 143 (S.D.Tex.1978); *Miller v. Smith*, 431 F.Supp. 821 (N.D.Tex.1977), *rev'd*, 625 F.2d 43 (5th Cir.1980).[5] Thus, in

---

**5.** In light of the Supreme Court's decision in *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980) the Fifth Circuit reversed the district court's decision in *Miller*, apparently concluding that, by the literal terms of the statute, article 5535's application did not depend on whether or not a prisoner had an *opportunity* to prosecute a civil action from jail. The recent Texas decision in *Johnson*, however, at least settles the question of article 5535's application in cases where a prisoner *actually* files an action. Moreover, the *Johnson* decision confirms the district court's conclusions in *Miller* regarding the legislative intent underlying article 5535, and casts serious doubt on the

the present circumstances, where Winton not only had the "opportunity" to, but in fact actually did, file suit despite his disability, the Court is constrained to find that the Supplemental Claim is time-barred, since a contrary holding would thwart the legislative intent of article 5535 as unanimously pronounced by the courts.

Not surprising, cases in other jurisdictions involving similar tolling statutes have produced identical results. Interpreting the Michigan tolling statute for prisoners, the court in *Campbell v. Guy*, 520 F.Supp. 53 (E.D.Mich.1981), held that a prisoner who actually filed lawsuits during the period of his imprisonment had not suffered a "disability" which would justify application of the tolling statute in a later suit filed by the prisoner. The Court observed that the Plaintiff, having filed the earlier actions, was presumably well aware of his legal recourse under 42 U.S.C. § 1983 and demonstrably possessed with free access to the legal system. Accordingly, the Court held the tolling provision inapplicable to the later-filed claim. Moreover, the Court further concluded that application of the tolling statute to the prisoner's later claim would be inconsistent with the federal law and policy of section 1983. *Id.* at 56.

Since Winton, equally aware of his legal recourses and with a suit already pending against Abbott, nevertheless waited for almost three years before asserting the Supplemental Claim, article 5535 is inoperative and does not toll the applicable limitations period.

Thus, under the clear authority of *Johnson v. McClean, supra,* the Supplemental Claims # 2, # 3, and # 4 are barred by limitations since they were not raised within two years of the initial filing of the present action. Even if article 5535 could be interpreted as tolling the limitations period notwithstanding Winton's escape from the Jail in 1977, the statute certainly commenced to run once Winton chose to file the present action notwithstanding the disability provision. 630 S.W.2d at 793–94.

Accordingly, the supplemental claims became barred at least by June 28, 1981, notwithstanding Winton's continued imprisonment at all times following the institution of the present action.

For yet another reason, the claims asserted in the Supplemental Complaint, which was not filed until April, 1982, are barred because they were not included in the Complaint.

In this connection, Rule 15 of the Federal Rules of Civil Procedure provides that an amendment relates back to the date of the original pleading only if the claims asserted therein arise out of the conduct, transaction, or occurrence set forth in the original pleading. Fed.R.Civ.P. 15(c). When the Plaintiff attempts to allege an entirely different transaction by amendment, however, the new claim will be subject to the defense of the statute of limitations. 6 Wright & Miller, *Federal Practice and Procedure* § 1497, at 490 (1971). In the present action, it is undisputed that the claims asserted in the Supplemental Complaint arose out of transactions different from the occurrence giving rise to the cause of action asserted in the original Complaint. Indeed, none of the events complained about by Winton in the Supplemental Complaint occurred during the period of Winton's first incarceration in the Jail. Accordingly, the Supplemental Complaint does not relate back to the date the present action was instituted; instead, the claims raised in the Supplemental Complaint must be treated as having been raised for the first time on April 23, 1982.

## RECOMMENDATION

It is the recommendation of this Magistrate that the Defendants' Motion to Dismiss the Complaint as time barred be granted.

## ADDENDUM TO U.S. MAGISTRATE'S REPORT

Within ten (10) days after receipt of the Magistrate's Report, any party may serve

---

continued validity of the Fifth Circuit's holding in *Miller* with respect to cases where a prisoner

may have had access to the courts although he postponed the filing of his claim.

and file written objections to the findings and recommendations of the Magistrate. 28 U.S.C. Section 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in the report within the afore-mentioned (10) days shall bar an aggrieved party from attacking the factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.1982) *en banc*.