Bruce MILLER, Plaintiff,

v.

N. S. SMITH, Individually and in his capacity as member of the Dallas Police Department, and Donald Byrd, Police Chief of Dallas, Texas, Defendants.

No. CA 3–76–0231–C.

United States District Court,
N. D. Texas,
Dallas Division.

May 11, 1977.

---

6. No view is expressed or implied concerning the merits of any state law claim plaintiff may wish to assert.

Bruce Miller, pro se.

Lee E. Holt, City Atty., Joseph G. Werner, Jerry T. Steed, Asst. City Attys., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., Judge.

Plaintiff, a State prisoner, filed this civil rights action on February 4, 1976, seeking damages in the amount of $90,000 under 42 U.S.C. §§ 1981, 1983, and 1985. Defendants are Officer N. S. Smith and Chief Donald Byrd of the Dallas Police Department who are claimed to be responsible for the allegedly unlawful arrest of Plaintiff occurring on or about January 4, 1967, more than nine years prior to the filing of Plaintiff's complaint. Defendants filed a Motion to Dismiss on the theory that this action is barred by the applicable Texas statute of limitations, Art. 5526, V.A.T.S., which requires that such actions be commenced within two years. Petitioner replied by asserting that he is not subject to the State statute of limitations by virtue of Art. 5535,

V.A.T.S.[1], which suspends the running of the statute of limitations in actions accruing while a person is "disabled" by imprisonment. For the reasons set forth below, we are of opinion that the "tolling" or "disability" statute, to the extent that it recognizes imprisonment as a "disability", does not apply to federal civil rights actions and that Plaintiff's action must, therefore, be dismissed.

At the outset, it should be noted that while Plaintiff claims the benefits of the Texas "tolling" statute based on imprisonment, he has somehow managed to file this action even though he is still incarcerated. It is obvious, therefore, that Plaintiff is not in fact absolutely disabled from bringing suit. In addition, records compiled by the Administrative Office of the United States Courts reveal that prisoners filed a total of 668 civil rights suits in the United States District Courts of Texas during Fiscal Year 1976. In fact, prisoners' actions constituted 41% of all civil rights suits filed in the federal courts of Texas during FY 1976.

## I.

The question in determining whether to apply the Art. 5535 "tolling" provision in this case is whether a federal court, in adopting by analogy a State statute of limitations, must also adopt all related State statutes. If this were a diversity action in which this Court would be proceeding as if it were "only another court of the State"[2], the answer would probably be in the affirmative. We say "probably" for two reasons.

First, it is open to question whether the "imprisonment" provision of Art. 5535 retains any vitality. A review of reported Texas cases indicates that it has been 75 years since a State court has suspended the statute of limitations based on imprisonment.[3] In the only two other reported State cases on the question, one court held that imprisonment commencing after a cause of action accrues does not "toll" the statute[4] and another held that a probated sentence does not constitute "imprisonment."[5] The only reported application of the Texas imprisonment provision occurring in modern times was by the United States District Court for the Southern District of Texas which did so without any discussion of the propriety of applying the statute but simply with a statement that:

> "Imprisonment under Texas law is considered a disability and the statute of limitations does not begin to run until after the disability is removed."[6]

Second, even if we were proceeding in diversity, there is a strong argument, for the reasons set forth in Part II of this opinion, that the purposes of Art. 5535 are satisfied by the application of pertinent federal statutes and rules, particularly 28 U.S.C. § 1915, the *in forma pauperis* statute. On this point, Chief Judge Haynsworth, writing for the Fourth Circuit, fashioned a federal "tolling" rule and applied it in a diversity case. That court held that the Virginia statute of limitations was "tolled" by the filing of a similar action in federal court in Kentucky. After a lengthy analysis of the Virginia statute of limita-

1. "Art. 5535. Person under disability.

   If a person entitled to bring any action mentioned in this subdivision of this title be at the time the cause of action accrues either a minor, a married person under twenty-one years of age, a person imprisoned or a person of unsound mind, the time of such disability shall not be deemed a portion of the time limited for the commencement of the action and such person shall have the same time after the removal of his disability that is allowed to others by the provisions of this title."

2. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

3. *Lasater et al. v. Waites,* 67 S.W. 518 (Tex.Civ. App.1902).

4. *Blum v. Elkins,* 369 S.W.2d 810 (Tex.Civ.App. Waco, 1963).

5. *Carter v. Associated Transfer & Storage Co.,* 410 S.W.2d 830 (Tex.Civ.App. Waco, 1966).

6. *Campise v. Hamilton,* D.C., 382 F.Supp. 172, 185 (1974).

tions and the court system of that State, Chief Judge Haynsworth concluded that:

> "Since every purpose of Virginia's proscription against the commencement of tort actions more than two years after the injury has been served, we conclude that, as a matter of federal law, the statute has been satisfied." [7]

█ Believing as we do that a federal court would not be absolutely obligated to apply Art. 5535 even in a diversity action, the freedom of a federal court to exercise reason in deciding whether to apply such a State "tolling" statute should be even greater in federal question cases and even greater yet in federal civil rights actions. This conclusion is implied in the words of pertinent federal statutes. The Rules of Decision statute, 28 U.S.C. § 1652, for example, provides that State rules shall govern "in cases where they apply", implying that federal courts may exercise reason in determining whether a State rule does, indeed, apply to a given case. As for federal civil rights actions, 42 U.S.C. § 1988 provides for application of a pertinent State rule "so far as the same is not inconsistent with the Constitution and laws of the United States", implying that federal courts have a duty to determine whether State rules are consistent with the policies underlying federal civil rights laws.

The cases support this conclusion, for while it is routinely held that State statutes of limitations should be applied where there is no applicable federal limitation period, the Supreme Court of the United States has held that, in federal question cases, federal principles should be followed in determining when a cause of action has accrued [8] and when a statute of limitations has been "tolled". [9] The footnoted Supreme Court case on "tolling" involved application of the federally recognized doctrine of "fraudulent concealment" where there was no analogous State rule. In a case more nearly on point, the Second Circuit refused to apply a Connecticut statute providing for "tolling" of limitations when a defendant was "without the State" holding that such a rule was not applicable in a federal question case where federal service of process provisions made an out-of-state defendant amenable to process. [10]

█ In searching Fifth Circuit precedent, it seems clear in civil rights cases that federal and not State rules determine when a federal civil rights action has accrued. [11] In a similar case, Judge Wisdom writing for the Fifth Circuit went on to explain why federal law determines when an action has accrued:

> "The State statute [of limitations] is applied in the first place not as a matter of legal compulsion, but merely as a matter of convenience; there is no other period of limitation available." [12]

In addition, the Fifth Circuit has instructed federal district courts to "look to the federal purpose, policy and intent of Congress as to the objectives of the legislation in determining whether the pursuit of state remedies tolls . . . [the State statute of limitations.]" In that federal civil rights action, the Fifth Circuit found that the applicable Florida statute of limitations could be suspended by a federal "tolling" rule recognizing the filing of a related action in State court. [13] On the very Texas statute involved in this case, the Fifth Circuit remanded the dismissal of a prisoner's civil rights action to the district court to "consider the applicability of Article 5535 to

---

7. *Atkins v. Schmutz Manufacturing Co.,* 435 F.2d 527, 538 (4th Cir., 1970).

8. *Rawlings v. Ray,* 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941).

9. *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

10. *Banana Distributors, Inc. v. United Fruit Co.,* 269 F.2d 790 (2nd Cir., 1959).

11. *Jackson v. Duke,* 259 F.2d 3 (5th Cir., 1958).

12. *Donaldson v. O'Connor,* 493 F.2d 507, 529 (5th Cir., 1974).

13. *Mizell v. North Broward Hospital District,* 427 F.2d 468, 474 (5th Cir., 1970).

the claim." [14] We read this to mean that the application of Art. 5535 is not a foregone conclusion but rather is a question to be decided based on a determination of whether the statute is reasonably applicable to federal civil rights actions under 28 U.S.C. § 1652 and whether Art. 5535 is consistent with federal policies underlying the civil rights acts in keeping with the command of 42 U.S.C. § 1988.

## II.

Having concluded that this court is not obligated to make a mechanical application of Art. 5535, we proceed to consider whether the State "tolling" rule should be adopted under 28 U.S.C. § 1652, that is, whether the "tolling" statute is reasonably applicable to a federal civil rights claim. As a starting point, we note that while several federal courts have applied similar State "tolling" statutes to civil rights cases [15], no federal court has found, in the absence of a State "tolling" statute, that incarceration should suspend the running of a statute of limitations. In response to an argument that the Florida statute of limitations should be "tolled" by plaintiff's imprisonment, the Fifth Circuit said, in a federal civil rights action:

"We can discern no reason why the statute should be "tolled" because Knowles was incarcerated." [16]

The Third [17] and Sixth [18] Circuits have similarly refused to "toll" a statute of limitations based on imprisonment where no "tolling" statute was incorporated in State law. This Court is not alone, therefore, in its inability to find any basis in reason for holding that incarceration prevents an individual from prosecuting a federal civil rights claim.

In examining the Texas disability statute, Art. 5535, it is said that the imprisonment provision was enacted by the Texas Legislature "to protect those who are incapable of protecting themselves." [19] There are at least four major reasons why prisoners would need the protection afforded by the "tolling" statute:

■ (1) At common law, a prisoner was said to be *civiliter mortuus* or civilly dead and therefore lacked legal capacity to prosecute a complaint. In Texas, Art. 48(5) of the former Penal Code provided, among those penalties which could be imposed upon conviction of crime, "Forfeiture of civil or political rights." There is no similar provision in the new Texas Penal Code so it is not clear whether a prisoner would encounter a legal capacity problem in prosecuting a suit in State court. It is clear, however, that prisoners have legal capacity to prosecute federal civil rights suits and that they are in no sense disabled in this respect.

■ (2) Because a substantial proportion of prisoners are indigent, the Texas Legislature may have reasonably concluded that incarceration prevents many potential plaintiffs from prosecuting State civil actions due to inability to pay necessary filing fees and other court costs. Such a consideration is inapplicable to federal civil rights suits, however, as 28 U.S.C. § 1915 provides for proceeding *in forma pauperis*. Plaintiff in this case requested and was granted permission to proceed without payment of fees under the terms of § 1915. Prisoners are not, therefore, "disabled" in this respect from prosecution of a federal civil rights claim.

■ (3) As prisoners are unable to seek out the services of an attorney, and because

---

14. *Bryant v. Potts,* 528 F.2d 621, 623 (5th Cir., 1976).

15. See, for example, *Ortiz v. LaVallee,* 442 F.2d 912 (2nd Cir., 1971) and *Ney v. State of California,* 439 F.2d 1285 (9th Cir., 1971).

16. *Knowles v. Carson,* 419 F.2d 369, 371 (5th Cir., 1969).

17. *Jones v. Bombeck,* 375 F.2d 737 (3rd Cir., 1967).

18. *Williams v. Hollins,* 428 F.2d 1221 (6th Cir., 1970).

19. *Carter v. Associated Transfer & Storage Co.,* supra, 833 [quoting *Mitchell v. Greenough,* 100 F.2d 184 (9th Cir., 1938)].

indigent prisoners are unable to pay legal fees, the Texas Legislature may have reasonably concluded that lack of legal representation would prevent prisoners from prosecuting a civil cause of action. While this consideration is not wholly inapplicable to federal civil rights suits, the problems that prisoners face in terms of legal representation are ameliorated somewhat by the availability of printed forms and instructions to assist inmates in preparing civil rights complaints. In addition, 28 U.S.C. § 1915(d) authorizes federal courts to request attorneys to represent prisoner-litigants proceeding *in forma pauperis.* We are unable to see, therefore, how prisoners are significantly more "disabled" with respect to legal representation than are other potential civil rights litigants.

■ (4) Because prisoners are unable to move about to gather evidence and to attend trial, the Texas Legislature may have determined that incarcerated persons could not successfully prosecute a lawsuit. With the tools provided by the liberal discovery provisions of the Federal Rules of Civil Procedure, however, prisoners are able to secure information regarding their claims and to obtain pertinent documents. In addition, federal courts regularly order prisoners brought to court when their attendance is necessary for a trial or hearing. Incarceration does not, therefore, disable prisoners from meaningful discovery or from attendance at court.

■ In addition to the above considerations, it is important to observe that the State statute of limitations, Art. 5526, to which the "tolling" provision is related, governs personal actions under State law, none of which involve the full range of interests sought to be served by the federal civil rights laws as discussed in Part III of this opinion. We find, therefore, that incarceration is no bar to the prosecution of federal civil rights claims and that the "tolling" provision, Art. 5535, does not "apply" to civil rights actions within the meaning of 28 U.S.C. § 1652.

### III.

■ A more important reason for declining to apply the "tolling" statute, however, is that to do so is inconsistent with the policies underlying the federal civil rights acts and, therefore, would be improper under 42 U.S.C. § 1988.[20] Just as federal courts have concluded that resort to federal civil rights remedies should not be delayed by requiring plaintiffs to first exhaust State remedies or by frequent invocation of the abstention doctrine, so should we avoid the delay that would result from application of State "tolling" rules where such rules are not in fact necessary to promote justice.

■ As the opinion in *Monroe v. Pape*[21] makes clear, the original title of the Civil Rights Act of 1871 (now 42 U.S.C. § 1983) was: "An Act to enforce the Provisions of the Constitution of the United States, and for other Purposes." This implies that a major purpose of establishing a federal private right of action for deprivation of civil rights was rehabilitative: to prevent further deprivations rather than simply to compensate citizens for wrongs that have already been suffered. It seems logical, therefore, that civil rights actions should be brought as quickly as possible after the deprivation complained of so that whatever remedial effect the suit will have can be promptly realized. Taking the facts of this case as an example, if an officer and the Chief of the Dallas Police Department are going about making unlawful arrests as

20. 42 U.S.C. § 1988. Civil rights actions ". . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and the laws of the United States, shall be extended to and govern the said court in the trial and disposition of the cause . . ."

21. 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

alleged by Plaintiff, such activities should be promptly challenged by a civil rights suit to protect other citizens from such conduct. Certainly, it is not asking too much that such an action be filed within two years as required by the applicable Texas statute of limitations. Where, as here, a plaintiff delays for nine years before filing his suit, it seems unlikely that the litigation will have any effect, even if successfully prosecuted to judgment, other than to document what types of civil rights violations were taking place a decade ago and to enrich the plaintiff.

■ The policies underlying the federal civil rights acts are of such a nature as to be positively aided by adopting State statutes of limitation which encourage individuals to prosecute their causes of action promptly. "Tolling" provisions, on the other hand, are generally inconsistent with and contrary to this policy of remedial effect, particularly the Texas "tolling" statute under analysis which relates to prisoners whose actions make up such a substantial proportion of federal civil rights cases.

### IV.

In conclusion, statutes of limitation are no longer regarded as harsh technical rules by which citizens are denied their day in court. Rather, they are recognized as necessary to avoid injustice. An excellent statement on this point is that of Mr. Justice Jackson who wrote as follows:

"Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to

prevail over the right to prosecute them"[22]

The need for a statute of limitations in federal civil rights actions is more pronounced than in other federal question cases as the defendants in civil rights actions are normally public officials who deal with numerous individuals each day. In the present case, for example, it is highly unlikely that the defendants, after a lapse of nine years, have any independent recollection of the events giving rise to Plaintiff's claim.

■ In applying State statutes of limitation by analogy, federal courts should exercise judgment as to whether related provisions of State law, such as "tolling" provisions should be applied. In some cases, it may be found that such "tolling" provisions are necessary to ameliorate what would otherwise be a harsh limitation period. Here, however, we are dealing with a two-year statute of limitation which is quite liberal; many States have one-year statutes applicable to such claims and federal courts have regularly applied the one-year statutes to bar civil rights complaints that are untimely filed.

Finally, while the delay in this case is great indeed, a mechanical adherence to the Texas "tolling" statute based on imprisonment could result in even more bizarre cases in which defendants could be sued for alleged deprivations of civil rights occurring decades before. Again, it is difficult to understand what purpose is served by such suits, and excessive delay would often be unjust to defendants. While prisoners do face burdens in prosecuting civil rights actions that are greater than those faced by citizens who are at liberty, the difficulties encountered by prisoners do not constitute an insuperable bar to suit. When it enacted the "tolling" provision at issue, we believe the Texas Legislature was seeking to afford due process to those who were genuinely "disabled" and not simply to suit the convenience of those imprisoned. In light of

22. *Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

pertinent federal statutes and rules, therefore, we believe that prisoners are not "disabled" from prosecution of federal civil rights suits and that application of Art. 5535 in this case would be contrary to the purposes of the federal civil rights acts, the intent of the Texas Legislature, and the just and efficient administration of the laws.

Based upon these considerations, we are of opinion that Defendants' Motion to Dismiss must be granted.