**Van David LaGON, Plaintiff,**

v.

**Marion S. BARRY, Jr., et al., Defendants.**

**Civ. A. No. 86–2251.**

United States District Court, District of Columbia.

March 2, 1987.

would have a more "substantial and direct impact" on the CHAMPUS public than the changes challenged here.

John Racin, Washington, D.C., for plaintiff.

Edward Allen, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

The plaintiff, Van David LaGon, an inmate at the Lorton Reformatory, seeks to recover for severe head injuries he sustained while in prison which are allegedly the direct or proximate result of conduct by the defendants, the District of Columbia and several District officials.[1] LaGon grounds federal jurisdiction on the Civil Rights Act, 42 U.S.C. § 1983, and 28 U.S.C. § 1343. In addition, the plaintiff brings several pendant state claims. Several motions are before the Court. The plaintiff

moves to voluntarily dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 41(a)(2) those claims in his complaint involving an attack on LaGon by another inmate in 1980 ("1980 assault"). The defendants oppose voluntary dismissal and move alternatively to dismiss the plaintiff's entire complaint.[2]

## II. BACKGROUND

### A. *The 1980 Assault*

Plaintiff LaGon was admitted to Lorton on December 14, 1976.[3] His complaint alleges that on January 2, 1980, another inmate assaulted him, striking him on the left side of his head with a baseball bat. LaGon did not report this incident. Nearly three years later, on November 14, 1982, he lost consciousness after drinking a homemade alcoholic beverage. He was transported to D.C. General Hospital and underwent radical surgery of the skull. During this operation, a portion of the plaintiff's cranium was removed. Subsequently, in March of 1984, LaGon underwent further surgery in order to have plastic sheathing inserted in his head to protect a part of his brain which had become exposed. The plaintiff maintains that these operations were a proximate result of the 1980 assault. He further claims that consequently he has "significant intellectual and other impairment ... [and] great pain and suffering." Plaintiff's Complaint at 4. Plaintiff charges that the defendants are responsible for his injuries because they knew, or reasonably should have known, that assaults of the kind which injured him were commonplace at Lorton and were the result of deficient policies and practices at the prison which did not offer inmates ade-

---

1. The plaintiff has named as defendants Mayor Marion Barry, Jr.; Director of the Department of Corrections, James Palmer; and Correctional Officer Alston.

2. After all responses to the aforementioned motions were filed, the defendants submitted a supplement to their motion to dismiss wherein they raised several new defenses. The motion was filed one and one-half months after the

motion to dismiss and without leave of court. The plaintiff has had no opportunity to respond to these arguments. Thus, the Court does not consider these supplementary defenses.

3. He is serving a sentence of 15 to 42 years after being convicted of aggravated assault upon a police officer.

quate protection from assaults by other prisoners.[4]

### B. *The 1985 Assault*

The plaintiff alleges that on August 16, 1985, he was in a locked cell in the maximum security unit at Lorton when a correctional officer named Alston entered his cell and struck the left side of his head with a club. Officer Alston then purportedly took hold of the plaintiff's throat and struck his head against the cell wall and against a commode in the cell. LaGon claims that these actions were totally unprovoked. The complaint states that plaintiff immediately lost consciousness and was again taken to D.C. General Hospital for treatment. Complaint at ¶ 20. On December 5, 1985, LaGon underwent surgery for the third time. The plastic sheathing previously inserted in his head to protect his brain was removed to permit treatment of an infection caused by the most recent attack. LaGon remained incapacitated for six months. At the end of that period, he returned to Lorton. To protect the vulnerable portion of his skull, LaGon was required to wear a helmet.

As a result of the 1985 assault, LaGon again claims to have suffered greatly. In addition, he states that the necessity of wearing a helmet at Lorton made him the object of other prisoners' derision. The plaintiff claims that the District of Columbia and the other named defendants are liable to him under the doctrine of *respondeat superior* or, alternatively, for negligence. Plaintiff claims that the defendants either knew or reasonably should have known that Officer Alston had demonstrated a pattern of violent attacks on inmates in his custody.[5]

### III. DISCUSSION

### A. *Defendants' Motion to Dismiss*

The defendants move to dismiss on the ground that the plaintiff's cause of action is barred by the applicable statute of limitations.[6] For the reasons set out below, the Court denies the defendants' motion.

The plaintiff rests this Court's jurisdiction on Count II of his complaint which asserts a cause of action under the Civil Rights Act, 42 U.S.C. § 1983. Because this statute does not state a limitations period, it is settled that federal courts will borrow an appropriate statute of limitations from state law. *Burnett v. Grattan*, 468 U.S. 42, 49, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1983). The parties agree that the relevant statute of limitations is D.C.Code Ann. § 12–301 (1981). Section 12–301 lists eight different limitations periods the lengths of which are determined by the type of action pleaded. Two of these limitations periods arguably apply in the instant case: section 12–301(4), a one year limitations period for "libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false imprisonment," or section 12–301(8), a three year limitations period employed if the action is not specifically covered by sections 12–301(1)—12–301(7). *See* D.C.Code Ann. §§ 12–301(4), (8) (1981).

■ The Court need not decide which of these periods is more appropriate and whether the plaintiff's action is barred pursuant to the correct one because of an exception to section 12–301 embodied in D.C.Code Ann. § 12–302(a) (1981). Section 12–302(a)(3) provides, in relevant part, that "when a person entitled to maintain an action is, at the time the right of action accrues: ... (3) imprisoned—he or his proper representative may bring action

---

**4.** Plaintiff's Count I for negligence and Count II for relief pursuant to section 1983 seek redress for the 1980 assault. The plaintiff requests $2.5 million in compensatory damages for each of these claims.

**5.** Plaintiff's Count III for assault and battery and Count IV for negligence both seek redress for the 1985 assault. The plaintiff requests $2.5 million in compensatory damages for each of these claims and punitive damages in the same amount under Count III. There is no allegation

of a Civil Rights Act violation resulting from the 1985 assault.

**6.** The defendants' motion to dismiss also suggests that the case may be dismissed on the authority of Rule 12(b)(6). However, the defendants nowhere provide any support for this assertion, and the plaintiff therefore never responds to the charge. Likewise, the Court does not consider this argument.

within the time limited after the disability is removed." *See* D.C.Code Ann. 12–302(a)(3). The Supreme Court has stated on several occasions that tolling rules are coequal to and coordinate with state statutes of limitations and thus are "an integral part of a complete limitations policy." *Board of Regents v. Tomanio*, 446 U.S. 478, 488, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1979); *e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Supreme Court has therefore concluded that when a federal court borrows a state statute of repose it must also borrow the state's provisions which toll that limitation period. In *Johnson v. Railway Express Agency, Inc., supra*, 421 U.S. at 463–64, 95 S.Ct. at 1722, the Court wrote that,

> [A]ny period of limitation ... is understood fully only in the context of the various circumstances that suspend it from running against a particular cause of action. Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of state ones. In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim.

On the strength of such precedent, this Court holds that section 12–302(a)(3) is applicable to the case at bar and tolled whatever District of Columbia statute of limitations is applicable at least until August 14, 1986, the date the plaintiff filed his complaint in the instant action.

The defendants' argument to the contrary is unavailing. In *Burnett v. Grattan, supra*, 468 U.S. at 48, 104 S.Ct. at 2928, the Supreme Court noted an exception to the principle of borrowing state law to fill gaps in federal statutes: "courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.' " This rule recognizes that certain state policies are inconsistent with federal ones and thus should not be applied.

This rule of law was recently applied to a nearly identical factual situation by a court in this District. In *Harley v. D.C.*, Civil Action No. 85–1057 (D.D.C. Oct. 22, 1985) [Available on WESTLAW, DCT database], the court refused to apply the tolling rule for imprisoned individuals stated by D.C. Code Ann. § 12–302(a)(3). While acknowledging that "[t]olling provisions are absorbed into federal law along with the local statute of limitations ...," *id.* at 2, *Harley* found that section 12–302(a)(3) was "inconsistent with the federal policy of bringing about prompt, decisive resolution of civil rights claims such as those covered by 42 U.S.C. 1983." *Id.; Burnett v. Grattan, supra*, 468 U.S. at 48, 104 S.Ct. at 2928.[7] The court was concerned that if inmates were allowed to sleep on their rights indefinitely before bringing a section 1983 action, the federal interest in timely resolving such claims would be thwarted.

Although this Court does not lightly depart from the holding of another member of this bench, the Court feels compelled to do so in the present case. In *Board of Regents v. Tomanio, supra*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440, the Supreme Court emphasized that the central policies underlying section 1983 are deterrence of further wrongful conduct and compensation of the injured party. *Id.* at 488, 100 S.Ct. at 1797; *see McClam v. Barry*, 697 F.2d 366, 375 (D.C.Cir.1983), *rev'd in part on other grounds, Brown v. United States*, 742 F.2d 1498 (D.C.Cir. 1984), *cert. denied*, 471 U.S. 1073, 105 S.Ct.

---

7. The *Harley* Court bolstered its conclusion by reasoning that individuals incarcerated at Lorton Reformatory have access to the courts and thus ought not to be considered "disabled" within the meaning of D.C.Code Ann. § 12–302(a)(3). The Court's conclusion ignores the fact that District of Columbia lawmakers must have been aware of this fact when they drafted section 12–302(a)(3).

2153, 85 L.Ed.2d 509 (1985). The Court in *Tomanio* discounted the "sound and sensible observation[s]" of the district court which did not track Congress' intent in creating an independent federal remedy. Similarly, the *Harley* court's observation that civil rights claims brought under section 1983 should be brought about promptly is sound and sensible but does not give adequate weight to the statute's primary objectives of compensation and deterrence. These goals will be furthered by adopting the District of Columbia's tolling provision, not by rejecting it.

Moreover, the weight of authority stands in marked contrast to the *Harley* decision. The United States Court of Appeals for this Circuit concluded without discussion that D.C. Code Ann. § 12–302 (1981) would toll the applicable statute of limitations for the purposes of a section 1983 action. *See McClam, supra,* 697 F.2d at 371. The Tenth Circuit reached the same conclusion in *Brown v. Bigger,* 622 F.2d 1025 (10th Cir.1980); [8] *see also, Covington v. Winger,* 562 F.Supp. 115, 122 (W.D.Mich.1983) *aff'd,* 746 F.2d 1475 (6th Cir.1984), *cert. denied,* 470 U.S. 1056, 105 S.Ct. 1764, 84 L.Ed.2d 826 (1985) (relying on *Board of Regents v. Tomanio, supra,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 and holding that plaintiff's imprisonment tolled the state statute of limitations for the purposes of an action brought under the Civil Rights Act).[9]

Finally, *Harley* fails to heed the guidance provided by the Supreme Court concerning the factors which should be considered when choosing an appropriate statute of limitations or tolling provision for the purpose of facilitating the Civil Rights Acts. In *Burnett v. Grattan, supra,* 468 U.S. at 50, 104 S.Ct. at 2929–30, the Supreme Court wrote,

[a]n appropriate limitations period must be responsive to [the] characteristics of litigation under the federal statutes. A State law is not "appropriate" if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts.

As noted earlier, the goals of the Civil Rights Acts are compensation and deterrence. *Id.* at 42; *Board of Regents v. Tomanio, supra,* 446 U.S. at 488, 100 S.Ct. at 1797. Thus, when a prisoner has an arguably valid cause of action under the Civil Rights Act, the legislative intent seems in favor of aiding the prisoner in his effort to recover damages. Prisoners face added burdens in prosecuting civil rights actions. They are often indigent and unable to select the attorney of their choice to represent them.[10] Additionally they cannot fully assist an attorney in the garnering of evidence for trial since they are physically constrained. These are the practicalities of prisoner/civil rights litigation. To ignore them by equating prisoners with citizens at liberty is to fly in the face of the Supreme Court's admonition in *Burnett.* This the Court refuses to do.

Thus, the defendants' motion to dismiss the plaintiff's complaint on the basis of D.C.Code Ann. §§ 12–301(4), (8) is denied. The Court finds the tolling provision for prisoners as disabled individuals applicable and, accordingly, holds the plaintiff's action to have been timely filed. *See* D.C.Code Ann. § 12–302(a)(3).

### B. *Plaintiff's Motion for Voluntary Dismissal*

The plaintiff moves the Court to permit him to voluntarily dismiss those claims per-

---

**8.** The Tenth Circuit reached this decision without the benefit of *Board of Regents v. Tomanio, supra,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440, which was handed down one month after the Tenth Circuit's ruling. Nonetheless, *Tomanio* merely affirmed *Bigger's* reasoning.

**9.** The defendants cite no case other than *Harley* to support their claim that D.C.Code Ann. § 12–302(a) is inconsistent with federal interests. The only other case discovered by the Court is *Miller v. Smith,* 431 F.Supp. 821 (N.D.

Tex.1977) (*Miller* was decided before *Board of Regents v. Tomanio, supra,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440, and employs reasoning which has been manifestly overruled by *Tomanio.*).

**10.** This situation is alleviated by 28 U.S.C. § 1915(a), (d), which provides for proceeding *in forma pauperis* and authorizes federal courts to request attorneys to represent prisoner-litigants who wish to bring claims *in forma pauperis.*

taining to the 1980 assault pursuant to Rule 41(a)(2). The plaintiff claims to possess neither the financial means nor adequate time to properly develop these claims before the scheduled trial date. Rule 41(a)(2) states, in pertinent part, that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). The decision to grant or deny this motion rests in the sound discretion of the trial court. *Cone v. West Virginia Paper Co.,* 330 U.S. 212, 217, 67 S.Ct. 752, 755, 91 L.Ed. 849 (1947); *Local 2677 AFGE v. Phillips,* 358 F.Supp. 60, 64 (D.D.C.1973). Such dismissals should not be granted *pro forma, American Cyanamid Co. v. McGhee,* 317 F.2d 295, 298 (5th Cir.1963), but are nonetheless permitted in most circumstances unless prejudice to the defendant will result. *Conafay v. Wyeth Laboratories,* 793 F.2d 350, 353 (D.C.Cir.1986).

The defendants claim that voluntary dismissal of the 1980 assault claim will prejudice them. They state that significant time and effort has been expended during discovery to gather evidence to rebut plaintiff's allegations concerning the 1980 assault. Defendants thus contend that voluntary dismissal might force them to wastefully retrace their steps at a later date [11] by defending the 1980 assault.

■ The defendants' argument is unpersuasive. In *Conafay v. Wyeth Laboratories, supra,* 793 F.2d at 353, the Court of Appeals for this Circuit held that voluntary dismissals should be granted unless a defendant will "suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage." The defendants have not demonstrated that they will suffer any such prejudice if the claims concerning the 1980 assault are dismissed.

If the plaintiff chooses to dismiss the claims relating to the 1980 assault, the Court will require him to pay to the defendants those attorney fees and costs incurred in response to plaintiff's allegations concerning the 1980 assault. The Court realizes that much of defendants' work may be applied to both the 1980 and 1985 assaults; these costs are, of course, not recoverable. The plaintiff will be responsible to reimburse the defendants only for those costs used to produce work product rendered useless by the dismissal of the 1980 assault claims.[12] Fed.R.Civ.P. 41(a)(2); *GAF Corp. v. Transamerica Ins. Co.,* 665 F.2d 364, 369-70 (D.C.Cir.1981).

At oral argument, the Court inquired whether a decision by the plaintiff to voluntarily dismiss the 1980 assault claims would have the additional, and obviously unintended, effect of obligating the Court to dismiss the plaintiff's entire case for lack of a federal claim.[13] The plaintiff's complaint is in four counts. Counts I and II relate solely to the 1980 assault. Count II is ostensibly the plaintiff's only federal anchor since only that count expressly states a claim under section 1983. Thus, dismissal of Count II would seem to defeat jurisdiction. The Supreme Court has stated that where there is pendant jurisdiction,

[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a

---

**11.** The defendants alternatively recommend that the Court should deny plaintiff's motion on the basis of Rule 42(a), which permits consolidation of actions involving common questions of law or fact. The defendants misconstrue the function of this rule. No case has been brought to the Court's attention where Rule 42(a) was permitted to defeat a plaintiff's motion for voluntary dismissal pursuant to Rule 41(a)(2). The Court thus rejects defendants' novel argument.

**12.** To determine the proper amount of such fees and costs, the defendants should submit an itemized list of its costs and attorney fees, in-

cluding an hourly rate, the matters worked on which are of no further use, the time spent on each project and any other information which will aid the Court in its final determination. The plaintiff will, of course, have an opportunity to oppose these claims.

**13.** The Court granted the parties the opportunity to address this concern. The plaintiff filed a supplemental brief on the issue on February 5, 1987. The defendant has since filed a timely opposition.

jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1965).

The plaintiff concedes that on its face only Count II of his complaint states a federal cause of action. Nevertheless, the plaintiff would have the Court read the complaint broadly to find a federal cause of action arising from the assault of 1985. Rule 8(f) of the Federal Rules of Civil Procedure provides that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f), and the Supreme Court has liberally construed this rule. *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). The plaintiff points out that several portions of his complaint may be construed to indicate an intent to allege constitutional injury on the basis of the 1985 assault.

█ The Court is not persuaded that the complaint states a federal claim relating to the 1985 assault. The language and structure of the plaintiff's complaint is unambiguous; as such, the Court is reluctant to imply a federal cause of action. It is the duty of an Article III court to limit its jurisdiction to cases which are truly federal. *See City of Kenosha v. Bruno,* 412 U.S. 507, 511, 93 S.Ct. 2222, 2225, 37 L.Ed.2d 109 (1973). Moreover, the Court seriously doubts whether the facts concerning the 1985 assault, as presently alleged, establish a section 1983 action.

Should the plaintiff decide to dismiss Counts I and II, the Court believes that the better course would be to dismiss the remainder of the complaint without prejudice, *see Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139, and to grant the plaintiff leave to amend his complaint and reopen the case. As the Supreme Court has stated, "[p]leadings are intended to serve as a means of arriving at fair and just settlement of controversies between litigants. They should not raise

barriers which prevent the achievement of that end." *Maty v. Grasselli Co.,* 303 U.S. 197, 200, 58 S.Ct. 507, 509, 82 L.Ed. 745 (1938).[14] The Court believes that dismissal with leave to amend both furthers this goal and provides the Court with a straightforward complaint, not one contorted to meet plaintiff's present needs.

As a final note, the Court reminds the plaintiff that this opinion leaves him with several options. As the United States Court of Appeals for the District of Columbia Circuit has written:

> Under the rule [41(a)(2) ], a plaintiff has the choice between accepting the conditions and obtaining a dismissal and, if he feels the conditions are too burdensome, withdrawing his dismissal motion and proceeding with the case on the merits.

*GAF Corp. v. Transamerica Ins. Co., supra,* 665 F.2d at 369–70. Thus, the plaintiff may retain federal jurisdiction by either retaining Count II relating to the 1980 assault or by dismissing that claim and amending his complaint to state a new federal claim. Otherwise, he must find his remedy in the state courts of the District of Columbia.

## IV. CONCLUSION

In sum, the defendants' motion to dismiss on the ground that the statute of limitations has run is denied because the Court finds the plaintiff to be disabled within the meaning of D.C.Code Ann. § 12–302(a)(3). The plaintiff's motion to voluntarily dismiss those claims relating to the 1980 assault is granted. However, voluntary dismissal will result in the plaintiff's case being wholly dismissed for lack of a federal anchor. Should the plaintiff nonetheless dismiss his 1980 assault claims, he may amend his complaint by adding a federal claim to his cause of action relating to the alleged 1985 assault. Upon choosing dismissal, the plaintiff must also pay the defendants' attorney fees and costs for their work rendered useless by dismissal.

---

**14.** The defendants' opposition to the plaintiff's supplemental memorandum is unresponsive to the jurisdictional question before the Court. The defendants appear to argue that the plaintiff cannot establish a viable section 1983 claim given the facts of this case. Such an argument would more properly be made in a motion for summary judgment. Defendants may, of course, file such a motion prior to trial.

The plaintiff has the option of dismissal on these terms and conditions or proceeding with all his claims to the merits.

### ORDER

Upon consideration of the defendants' motion to dismiss the entire complaint and the plaintiff's motion to voluntarily dismiss Counts I and II of the complaint, both parties' oppositions thereto, oral argument, the entire record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 28th day of February, 1987,

ORDERED that defendants' motion to dismiss be, and hereby is, denied; and it is further

ORDERED that plaintiff's motion to voluntarily dismiss Counts I and II of the complaint be, and hereby is, granted; and it is further

ORDERED that, if the plaintiff elects to dismiss Counts I and II, then the entire complaint will be dismissed; and it is further

ORDERED that, if the plaintiff nonetheless elects voluntary dismissal, he shall have 10 days to amend his complaint and to reopen the case; and it is further

ORDERED that, if the plaintiff elects to dismiss, he shall pay the defendants those attorney fees and costs relating solely to the 1980 assault claims.