**James MURRAY, a.k.a. James Hines, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. Nos. 92–0119 (LFO), 92–0120 (LFO).

United States District Court, District of Columbia.

June 25, 1993.

James Murray, pro se.

Lawrence G. McPherson, Asst. Corp. Counsel, Correctional Litigation Section, Washington, DC, for defendant District of Columbia.

## MEMORANDUM

OBERDORFER, District Judge.

In these consolidated cases, the plaintiff, who is proceeding *pro se,* challenges the delay in the execution of a detainer lodged by the Commonwealth of Massachusetts with the District of Columbia Department of Corrections. Plaintiff's principal contention is that defendants violated his rights under the Interstate Agreement on Detainers,

D.C.Code § 24–701. Defendants have filed a motion to dismiss or for summary judgment, and plaintiff has responded to the motion. In addition, plaintiff has filed an amended complaint, which will be treated as a motion for leave to amend, and defendants have filed a response. *See* Mem. & Order (March 24, 1993). For the reasons that follow, defendants' motion will be granted and plaintiff's motion will be denied.

### I.

The following sequence of events emerges from the various filings in these cases. In August and November of 1977, plaintiff was charged in Massachusetts with a number of offenses, including armed robbery and assault with a deadly weapon. In November 1977, he escaped from the Suffolk County Jail in Massachusetts and remained at large until March 1978. At that time he was arrested in the District of Columbia on charges of burglary. Plaintiff was released on bail, but failed to appear for subsequent court appearances and again remained at large until June 1978, when he was arrested again in the District of Columbia on charges of armed robbery. This time, plaintiff was denied bail and held in preventive detention.

In April 1980, plaintiff was tried and convicted in the Superior Court of the District of Columbia of armed robbery, unauthorized use of a vehicle and carrying a firearm without a license. He was sentenced in May 1980 to a term of incarceration of 15 years to life.

In August 1981, plaintiff was tried and convicted in Superior Court on a Bail Reform Act violation. On August 26, 1981, he was sentenced to a term of 20 months to five years, consecutive to the prior 15–year–to–life sentence. Finally, in March 1982, plaintiff pleaded guilty in Superior Court to the burglary charge and was sentenced to time served.

While plaintiff was in the District of Columbia during 1978–81, the Massachusetts charges against him remained pending. According to plaintiff, during September 1978, while he was being held in preventive detention in the District of Columbia on the robbery charge, plaintiff submitted a written

request to Massachusetts authorities for a speedy trial on the outstanding Massachusetts charges. The Commonwealth of Massachusetts responded by lodging a detainer with the District of Columbia Department of Corrections, seeking to take custody of plaintiff to try him on the pending charges (which now included an escape charge). The District of Columbia initially declined to release plaintiff to Massachusetts authorities, informing them that he was not yet available for transfer because of his pending criminal cases in the District of Columbia.

In October 1981, however, following plaintiff's sentencing on the Bail Reform Act violation, the District of Columbia released plaintiff to Massachusetts. In January 1982, he was found guilty on the Massachusetts escape charge and sentenced to 4–7 years' incarceration. In February 1982, plaintiff was convicted of armed robbery in Massachusetts and sentenced to 11–14 years, consecutive to the escape sentence.

Plaintiff was then returned to the District of Columbia. He is currently incarcerated at Lorton, Virginia, and will begin to serve the sentences imposed by Massachusetts upon completion of his present period of incarceration on the District of Columbia convictions.

## II.

Although plaintiff's numerous filings are diffuse and difficult to decipher, it appears that his principal claim in these cases is that the delay between his request for disposition of the Massachusetts charges and the ultimate trial of those charges violated his rights under the Interstate Agreement on Detainers, codified at D.C.Code § 24–701.[1]

■ The IAD is a compact among the states and the federal government establishing procedures by which one jurisdiction may obtain temporary custody of a prisoner incarcerated in another jurisdiction for trial on outstanding charges. Article III(a) of the IAD contains a "speedy trial" provision

which states that a prisoner against whom a detainer has been lodged has a right to be brought to trial on the requesting jurisdiction's outstanding charges within 180 days of the prisoner's submission of a written request for final disposition. D.C.Code § 24–701, Art. III(a). This provision applies, however, only when such a prisoner "has entered upon a term of imprisonment in a penal or correctional institution . . . ." *Id.*

■ The principle purpose of the IAD is to ensure "that a sentenced prisoner who has entered into the life of the institution to which he has been committed for a term of imprisonment not have programs of treatment and rehabilitation obstructed by numerous absences in connection with successive proceedings related to pending charges in another jurisdiction." *United States v. Roberts,* 548 F.2d 665, 670–71 (6th Cir.), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232 (1977).

In Civil Action No. 92–120, plaintiff seeks a declaration that the Massachusetts sentences are without force and effect as a result of the alleged IAD violation. In Civil Action No. 92–119, he seeks damages for the same alleged violation.

## A.

■ Because plaintiff seeks in No. 92–120 to challenge the duration of his confinement, the action must be treated as a petition for a writ of habeas corpus. *See Chatman–Bey v. Thornburgh,* 864 F.2d 804, 809 (D.C.Cir.1988).[2] The IAD is a congressionally sanctioned interstate compact, and is therefore considered law of the United States. *Carchman v. Nash,* 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

■ Defendants argue that jurisdiction of this action lies exclusively in Massachusetts. However, the Supreme Court has indicated

---

1. The federal version of the IAD is codified and annotated at 18 U.S.C.A.App. §§ 1–8.

2. Plaintiff's original complaint in No. 92–120, filed on January 14, 1992, is styled "Application for Declaratory Injunctive Relief and Judgment." On February 12, 1992, however, plaintiff filed a

Petition for Writ of Habeas Corpus in the same action, making essentially the same allegations as in the previously filed "Application." Plaintiff apparently recognizes, therefore, that this action is in the nature of a habeas corpus petition.

that in a habeas action challenging a subsequent period of confinement to take effect after the petitioner's present incarceration, jurisdiction is proper either in the district of present confinement or in the district where the subsequent sentence is to be served. *See Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 498–99 & n. 15, 93 S.Ct. 1123, 1130–32 & n. 15, 35 L.Ed.2d 443 (1973). Since plaintiff is presently in the custody of the District of Columbia, jurisdiction appears to be proper in this Court.

■ The majority of the courts of appeals have held that alleged IAD violations are not grounds for habeas relief absent a showing of actual prejudice to the factfinding process. *Seymore v. Alabama*, 846 F.2d 1355, 1359–60 (11th Cir.1988) (collecting cases), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 806 (1989); *see also* Mem. & Order (March 24, 1993).[3] As the court in *Seymore* declared: "[A] violation of Article III(a) of the [IAD] will support no post-conviction relief pursuant to 28 U.S.C. Sec. 2254 when petitioner alleges no facts casting substantial doubt on the state trial's reliability on the question of guilt." 846 F.2d at 1357.

■ Plaintiff has failed to make any showing that the delay in his trial on the Massachusetts charges prejudiced his right to a fair trial. Plaintiff alleges that the delay induced mental anguish, which caused him to become dependent upon nicotine and caffeine. However, "actual prejudice" in this context refers to the effect on the factfinding process at plaintiff's trial, not to the conditions of confinement. *See id.* at 1360. Plaintiff also states that his confinement in the maximum security facility at Lorton deprived him of a law library and caused "Post–Traumatic Stress Disorders" which affected his demeanor at the trials. However, plaintiff was represented by counsel during the Massachusetts trials and appeals, and there is no indication that the lack of a law library deprived him of a fair trial. Moreover, plaintiff's placement in maximum security was the result of his own conduct: his escape from the Massachusetts jail, jumping bail in the District of Columbia, and disciplinary and security concerns while in confinement. *See, e.g.*, Def. Motion, Ex. 2, 3, 4.

■ Even if plaintiff had made the requisite showing of actual prejudice, his claim of an IAD violation would fail as a matter of law. The 180–day period established by the IAD applies to prisoners who have "entered upon a term of imprisonment"; it does not apply, therefore, to those held in preventive detention awaiting trial, or to prisoners who have been convicted but not yet sentenced. *United States v. Currier*, 836 F.2d 11, 16 (1st Cir.1987); *United States v. Wilson*, 719 F.2d 1491, 1494–95 (10th Cir.1983). Plaintiff argues that the 180–day period began to run in May 1980, when he was sentenced on the convictions for armed robbery, unauthorized use of a vehicle and carrying a firearm without a license. At that time, however, plaintiff continued to be held pending trial on the additional D.C. charges of bail jumping and burglary. Plaintiff was not sentenced on the bail jumping charge until August 1981.[4] He was then released to Massachusetts in October, and was tried and convicted on the Massachusetts charges in January and February of 1982. As of May 1980, therefore, he had not "entered upon a term of imprisonment" within the meaning of Article III(a).[5]

Assuming that plaintiff's alleged 1978 request for disposition of the Massachusetts charges remained valid, the earliest date on which he could have "entered upon a term of

3. Because the issue of actual prejudice was not raised in defendants' dispositive motion, the March 24, 1993 Memorandum and Order gave the parties an opportunity to address the issue in supplemental filings.

4. The record discloses that the delay between May 1980 and August 1981 was occasioned by several events, including unopposed continuances (July 28, 1980; November 3, 1980; December 5, 1980); a mistrial (February 4, 1981); defendant's motion for continuance of the trial (February 26, 1981); a second mistrial (April 2, 1981); and an appeal (April 30, 1981). *See* Plaintiff's "Declaration With Supporting Exhibits" dated June 21, 1992, Ex. B.

5. For reasons that are not entirely clear, plaintiff was transferred to Massachusetts before the D.C. burglary charge was pursued to conviction. He was sentenced on that conviction to time served in March 1982, following his return to the District of Columbia upon final disposition of his Massachusetts cases.

imprisonment" to trigger Article III(a) would be August 26, 1981 (when he was sentenced on the D.C. bail jumping charge).[6] Plaintiff was tried on the Massachusetts charges within 180 days of that date. Therefore, there was no violation of Article III(a) of the IAD.

■ Although the IAD argument is plaintiff's principal claim, he also argues at times that the delay in bringing him to trial on the Massachusetts charges violated his speedy trial rights under Mass.R.Crim.P. 36 and the Sixth Amendment to the United States Constitution. As for the former contention, it is well established that alleged violations of state procedural rules cannot provide a basis for relief in a federal habeas action. *Edwards v. Butler*, 882 F.2d 160, 163 (5th Cir. 1989); *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

■ Plaintiff's Sixth Amendment argument also must be rejected. First, the argument was squarely raised before, and rejected by, the United States District Court for the District of Massachusetts. *See Hines v. Shannon*, No. 89–0740, Mem. & Order (D.Mass. July 7, 1989).[7] This portion of plaintiff's claim raises nothing new and is therefore properly dismissed as a successive petition. *See* Rule 9(b), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254; *Flittie v. Solem*, 882 F.2d 325, 326 (8th Cir.1989); *Andre v. Guste*, 850 F.2d 259, 262 (5th Cir. 1988). In any event, as explained by the District Court of Massachusetts, plaintiff's Sixth Amendment argument must be rejected on the merits. It is clear that the delay in trial on the Massachusetts charges was attributable to plaintiff's escape from custody and arrest on several District of Columbia charges.[8] *See Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Further, the fact that plaintiff fled the jurisdiction with knowledge of the

charges against him must "weigh[ ] heavily against him" in determining whether he properly asserted his right to a speedy trial. *See Doggett v. United States*, — U.S. —, —, 112 S.Ct. 2686, 2691, 120 L.Ed.2d 520 (1992).

The record reveals that there is no genuine issue as to any material fact and that defendants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Accordingly, an accompanying Order grants defendants' motion for summary judgment in No. 92–120 and dismisses that action.

#### B.

In Civil Action No. 92–119, plaintiff seeks damages in the amount of $400,000 as a result of the alleged IAD violation, presumably under 42 U.S.C. § 1983. Defendants argue initially that plaintiff's § 1983 claim is barred by the statute of limitations. Under the three-year "catch-all" limitations period applicable to § 1983 actions under D.C.Code § 12–301(8); *see Greenfield v. District of Columbia*, 623 F.Supp. 47, 48 (D.D.C.1985), plaintiff's claim would appear to be time-barred, because the statute of limitations would have begun to run (at the latest) when plaintiff's appeal of his Massachusetts conviction was denied in October 1983.

■ However, D.C.Code § 12–302(a)(3) provides that when a person is imprisoned at the time his right of action accrues, "he or his proper representative may bring action within the time limited after the disability is removed." This provision has been interpreted to require tolling of the statute of limitations in prisoners' § 1983 actions until release from prison. *La Gon v. Barry*, 658 F.Supp. 55, 58–59 (D.D.C.1987) (citing *McClam v. Barry*, 697 F.2d 366, 371 (D.C.Cir.1983)). Because plaintiff remains incarcerated, defendants' contention that the action is time-barred must be rejected.

---

**6.** In fact, it appears that plaintiff had not yet "entered upon a term of imprisonment" even at the time he was released to Massachusetts, for the D.C. burglary charge remained pending.

**7.** Plaintiff now argues that the District Court of Massachusetts lacked jurisdiction of his earlier habeas petition. However, under the *Braden* rule of concurrent jurisdiction in detainer cases,

*see* 410 U.S. at 498–99 & n. 15, 93 S.Ct. at 1130–32 & n. 15, plaintiff's argument is meritless.

**8.** The period of time spent in the District of Columbia's custody resulted from several defendant-initiated or neutral events in the context of several pending charges, and did not represent an unreasonable delay. *See supra* note 4.

Nevertheless, plaintiff's § 1983 claim must be dismissed as meritless. First, as explained previously, plaintiff has failed to make out a violation of the IAD. *See supra* pp. 8–9.

Second, in any event, plaintiff's § 1983 claim fails under *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that a municipality is liable under § 1983 only if its official policy caused the complainant's deprivation of rights.[9] Far from claiming that the alleged IAD violation was a result of official policy of the District of Columbia, plaintiff repeatedly alleges that District officials violated the District's policy of full compliance with the IAD. Under *Monell,* plaintiff has no § 1983 claim against the District of Columbia.

In an apparent attempt to remedy this problem, plaintiff has filed a proposed amended complaint naming as defendants several individual employees of the D.C. Department of Corrections, as well as Mayor Kelly, the Metropolitan Police Department and the District of Columbia. Plaintiff's proposed amended complaint is treated as a motion for leave to file an amended complaint. *See* Mem. & Order (March 24, 1993).

The naming of defendants in their individual capacities does not save plaintiff's § 1983 claim, because the individual defendants are entitled to qualified immunity. As explained above, plaintiff has failed to establish a violation of Article III(a) of the IAD. Even assuming that there was such a violation, however, there was no violation of a "clearly established" right of which a reasonable government actor would have known. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). During the entire period of plaintiff's confinement in the District of Columbia, local charges against him were pending. The proposed individual defendants acted reasonably in concluding that plaintiff was being held in pretrial/presentence status and had not "entered upon a term of imprisonment" within the meaning of the IAD. This conclusion is supported by the leading case law at the time of the events in question. *See United States v. Roberts,* 548 F.2d 665, 670–71 (6th Cir.) (IAD "does not apply to persons in custody awaiting final disposition of charges in the custodial jurisdiction"), *cert. denied,* 431 U.S. 920, 97 S.Ct. 2188, 53 L.Ed.2d 232 (1977).

Accordingly, plaintiff's motion for leave to file an amended complaint will be denied on the ground of futility. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Because there is no genuine issue as to any material fact and defendants are entitled to judgment as a matter of law on plaintiff's § 1983 claim, the accompanying Order grants defendants' motion for summary judgment.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 24th day of June, 1993, hereby

ORDERED: that defendants' motion for summary judgment should be, and is hereby, GRANTED; and it is further

ORDERED: that plaintiff's motion for leave to file an amended complaint should be, and is hereby, DENIED; and it is further

ORDERED: that these actions are DISMISSED pursuant to Fed.R.Civ.P. 56.

---

9. Plaintiff's original complaint in No. 92–119 names only the District of Columbia as defendant.